THE STATE ex rel. HAMILTON, Appellant, v. BROWN, Collector, etc.

Division Two, February 24, 1903.

1. **Taxation: SCHOOL DISTRICT: WRONGFUL EXTENSIONS: MANDAMUS..** Whether the action of the county clerk in placing a taxpayer in a certain school district, was legal or illegal, the collector is not responsible for his acts, and can not be compelled by mandamus to accept as full payment a less rate of taxes than his book shows the taxpayer owes, on the theory that the taxpayer had for years lived in a district where school taxes are forty cents on the $100, while the tax-books listed him as a resident of another district where the rate is 100 cents. ' The collector is not responsible for the tax-books, but he is responsible for the taxes as they appear upon the tax-books, and they can not be changed by him in any manner, except specifically in pursuance to statute. And, hence, mandamus. can not be employed to compel him to accept a certain sum in payment of taxes and to pay the money so paid into a school district different from that in which his tax-book shows the taxpayer was listed.

2. ————: MINOR'S PROPERTY. If the personal estate of a minor is assessed to the minor, or to the estate of the minor, the tax should' be apportioned to the school district in which the minor has his domicile. And if the minor has a permanent domicile, the taxes therein may be assessed to the minor or his curator, but, wherever assessed the taxes belong to the school district of the minor's., domicile. But the personal property of the minor may be listed by the curator as his own, and if the minor has no settled place of residence that should be done, and the taxes assessed according to the rate fixed for the school district in which the curator lives, and apportioned to it.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*Martin & Woolfolk* for appellant.

(1)   The property of the minor was under the control and dominion of his guardian and curator.   No one else was under obligation for the preservation and care, or responsible for its waste or destruction, and no other person had authority to collect, loan or change the character of the personal estate without an order of court, and no one but the guardian and curator could be assessed with the property or become liable for the taxes thereon.   Tousey v. Bell, 23 Ind. 423; Smith v. Macon, 20 Ark. 17; Payson v. Tufts, 13 Mass. 493; Baldwin v. Fitchburg, 8 Peck 494; State v. Carson, 13 Atl. 265. Personal property is presumed to be at the domicile of the owner, but this presumption is dispelled whenever the facts show its location elsewhere.   Railroad v. Cass Co., 53 Mo. 17; Taylor v. St. Louis, 47 Mo. 594; State ex rel. v. County Court, 69 Mo. 454; Corn v. City of Cameron, 19 Mo. App. 573; McDaniel v. Bard, 17 Mo. App. 545.   (2)   The guardian and curator is the legal owner of the estate for the purposes of taxation.   State ex rel. v. Burr, 143 Mo. 209.   (3)   Mandamus is the only adequate and complete remedy.   Mandamus in proceedings analogous to this have often been sustained by the appellate courts. · State ex rel. v. Schnecko, 11 Mo. App. 165; State ex rel. v. Burkhardt, 59 Mo. 75; State ex rel. v. Dougherty, 45 Mo. 294; State ex rel. v. Secretary of State, 33 Mo. 293; School Dist. v. Gooding, 120 Mo. 67; State ex rel. v. Riley, 85 Mo. 156.   The order which the county court made can not affect the right of the petitioner.   It was made without notice to him, and upon every principle of law is void for that reason.   State v. Byers, 67 Mo. 706; Petition of Powers et al., 52 Mo. 218.

*Geo. T. Dunn* and *Norton, Avery & Young* for respondent.

FOX, J.—On December 9, 1898, the appellant presented his petition to the judge in chambers and an alternative writ of mandamus was issued. The petition was in substance as follows:

George A. Hamilton alleges that he was the curator of Charles M. Hamilton, and that he, the curator, was a resident of school district No. 2, township 49, range 1 east. That he was appointed curator in 1888 and had charge of all the minor's personal property, that the same was in notes, moneys, bonds, and he, the curator, at all times kept these securities at his residence in said district No. 2, and before the year 1897 the property had always been assessed and taxes paid in school district No. 2. That in 1897 the assessor assessed the same and located it in said district No. 2, but that the county clerk in making up the school tax book extended it in school district No. 4, township 49, range 1 west, and delivered the same to the collector, and that the collector was then threatening to collect the taxes as shown by said school tax book as per estimate of said school district No. 4. That the rate of taxes in said district No. 2 is 40 cents and in said district No. 4 is 100 cents on the $100. That the collector is in legal possession of said school tax book so erroneously made by the said county clerk, and is attempting to collect the taxes as extended by the clerk and if he is not prevented he will collect the same and pay it into the county treasury to the credit of said district No. 4. A tender is then pleaded of all the taxes shown by said taxbill except the school tax, and a tender of 40 cents on the $100 as school tax. The prayer of the petition is for a writ of mandamus against said collector commanding him to accept and receive the amount so tendered according to the estimate furnished by district No. 2, and that when so paid the respondent be required to pay the school tax so collected into the treasury to the credit of school district No. 2.

The alternative writ was issued and the respondent first filed a demurrer on the grounds that the statement in the petition did not warrant the relief prayed for. This was overruled and the respondent at the time excepted. Respondent then filed his answer, which was as follows, in substance:

Your respondent for reason why he should not obey the commands of the said alternative writ states, that he is collector of Lincoln county, and that George A. Hamilton is curator of the estate of Charles M. Hamilton, a minor; that the school tax book under authority of which he is demanding and collecting these taxes was duly certified to him by the clerk of the county court of Lincoln county, and received by him. That the same charges the said Charles M. Hamilton with the school tax as assessed in school district No. 4, township 49, range 1 west, at the rate of 100 cents on the $100, and that this respondent had no authority to alter or in any way change the said school tax book and it is his duty as collector to collect the taxes as assessed therein.

The respondent further says that this court has no jurisdiction by writ of mandamus to compel him to change or in anywise alter the assessment as certified to by the said county clerk, and if there is any error in the assessment that the county clerk alone, under the authority of the county court or by proceedings brought against him, has authority to hear and alter such erroneous assessment and that this court has no jurisdiction in this action. It is further alleged that the petition or alternative writ does not show that the minor, Charles M. Hamilton, at the time the writ was sued out or at any time theretofore was a resident of school district No. 2. He alleges that at the time the assessment was made he was a resident of district No. 4. Denies that the money should be paid to district No. 2 and denies all and every other allegation in the petition or alternative writ not specially admitted.

Upon an examination of the record, we find the facts as stated by the trial judge in his written opinion sub-

stantially correct. At least, the difference as to the facts as stated by relator and the trial judge have no material bearing upon the legal questions involved in this controversy. Hence we adopt the statement of the trial judge as to the facts.

"In the year 1883 one Charles Hamilton, with his wife and minor child, Charles M. Hamilton, resided in the town of Troy, Lincoln county. The town of Troy was then and is now in school district No. 4, township 49, range 1 west. During that year Charles Hamilton died, and his widow and minor son continued to reside in Troy till her death in 1888, when she too died. The minor at that time was about nine year old, and his uncle, the plaintiff herein, was appointed by the probate court guardian and curator of said minor in 1888 and continues to hold such position. The guardian and curator resides and had for at least twenty years, in school district No. 2, township 49, range 1 east, in Lincoln county. Immediately after the death of his mother the minor was taken by his aunt to another portion of Lincoln county and continued to reside with her till the year 1897, attending school in the meantime at various places. The property of the minor, consisting of notes and other securities in the hands of the curator, was assessed by the assessor of Lincoln county, who indorsed on the list the location of said property as in district No. 2, township 49, range 1 east. The clerks of the respective school districts made their estimates of school expenses and names of resident taxpayers in their districts as required by law. The clerk of district No. 2, township 49, range 1 east, made no return of plaintiff guardian and curator in his said district. The clerk of district No. 4, township 49, range 1 west, listed plaintiff as such curator and guardian in his district. The county clerk in making up the school tax book, proceeded to assess the amount of the estimates of the various districts, and among them the above-named district, and in so doing returned plaintiff guardian and curator in district No. 4, township 49, range 1 west, in accordance with the enumeration list, and extended the tax on the personal

property under the rate of such district. The school tax book in this shape went to the collector, who now holds it in the same condition, and the effort is now made by plaintiff to compel the collector by writ of mandamus to receive the school tax according to the estimate of district No. 2, and at the rate fixed by such district, and when so paid to turn the same over to the treasurer to the credit of district No. 2.''

· Upon a full hearing of the application for ''writ of mandamus'' in this cause, to compel the collector to receive the taxes according to the rate of taxation in school district No. 2, and pay the amount so collected from relator into the treasury to the credit of school district No. 2, the writ was denied and judgment for costs in favor of defendant and against the plaintiff. From this judgment, plaintiff appeals to this court, to the end that this court may review the action of the trial court. The trial court in a written opinion filed in this cause, said, upon the subject as to the remedy sought:

''The duty of making the 'school tax book' devolves upon the county clerk, which book shall be subdivided, corresponding to the districts in the county and numbered accordingly, and he shall place in the proper subdivisions: first, a list of the names, alphabetically arranged, of all persons owning any personal property in the districts, total value thereof and the amount of school tax assessed thereon; second, a list of all the lands and town lots, etc. [Sec. 8067, R. S. 1889.] The enumeration lists inform the county clerk of the amount required and rate of taxation in each district and also the names of the resident taxpayers in such district, while the assessment of the county assessor, as returned in his lists, informs the clerk of the property owned by such resident taxpayer. From these two sources of information he is enabled to make up the 'school tax book.' The county clerk of Lincoln county in making up the school tax book containing the assessment complained of proceeded in the manner above indicated. The plaintiff as curator of Hamilton was returned by the district clerk as being in district No. 4,

and the county clerk, without ignoring the enumeration lists, could not have placed him elsewhere. The assessor is not required or authorized to determine the school district of a taxpayer; the 'assessor's book' which he makes up—legally made up—contains no such information. The assessor has to do with no *particular tax,* but his duty is ended when he has ascertained and listed all the taxable real and personal property in his county, with the name of the respective taxpayer (sec. 7531, R. S. 1889; amended, Laws 1893, p. 216), and made his assessment book therefrom.

"The assessor's book when turned over to the county court would not contain the number of the school district of any taxpayer, and hence the equalization board could not remedy any such wrong as is here complained of. The alleged wrong first arises, when the county clerk, after the assessor's books are corrected and adjusted, makes out the school tax book, and then fails to proceed in so doing as the law directs. Section 7579, Revised Statutes of 1889, refers to the power of the county court to determine erroneous assessment or mistakes or defects in description of lands;  .  .  . 'on application of any person who shall, by affidavit, show good cause for not having attended the county board of equalization.' Conceding this to apply to personal property (which is doubtful from the phraseology) yet it must be an erroneous assessment which existed and could have been remedied by the board of equalization, which in a case like this never existed at such time. Section 7644 in terms applies only to erroneous assessment of lands. But in this case there is no erroneous assessment complained of, it is simply an erroneous taxation alleged. If plaintiff is taxed in the wrong district or wrong county, then it is illegal and its collection can not be enforced. The payment of an illegal tax by him, would not relieve him from the payment of a tax where it legally belongs; under the authority of the 'school tax book' certified to the collector, he is bound, in the dis-

charge of his duties, to proceed and act in accordance with its commands. If this tax is properly due district No. 2, then the fact appears it has never been assessed or extended by the county clerk for district No. 2, but has been assessed or extended at a different rate in another district, and how then can the collector be compelled to collect a tax for district No. 2 which has never been extended by the county clerk? If the county clerk had no right or authority to assign the curator to district No. 4, and assess a tax against him according to the rate fixed by said district, then such taxation is simply illegal and void, and his property is not subject to levy to pay the same, and if seized and sold by the officer may be recovered by the plaintiff in an action of replevin against the purchaser. [Railroad v. Lowder, 138 Mo. 538.] If he is sued for the tax, he may set up the illegality and defeat the action. No injunction would even lie, for there is no multiplicity of suits to avoid, which alone gives jurisdiction to courts of equity to restrain the collection of illegal taxes. [Michael v. City, 112 Mo. 610.] Hence, my opinion is that the plaintiff has misconceived his remedy."

We think clearly that the trial court was right in denying the writ. The facts as disclosed in this case show that the county clerk extended the taxes to the respective school districts; whether his action was in pursuance of the provisions of the statute, whether legal or illegal, the collector was not answerable for the acts of the clerk. After the tax books were adjusted and turned over to the collector, he had but one duty to perform; that was to collect the taxes and apply them as indicated by the tax book. The collector has no power over the tax books, he is not authorized by any statute that has been brought to the attention of this court, to alter or change the tax books at pleasure. He is responsible for the taxes as they appear upon his books, and if they are changed in any manner, except in pursuance of the statute, however just the change might be, it would afford him no protection.

Mandamus is a remedy sought to compel the performance of some ministerial duty which is required to be performed by the law of the land.

No such duty as was requested of the collector in this cause, is enjoined upon him by the law. A number of cases are cited by appellant in support of the doctrine that "*mandamus*" is the proper and appropriate remedy in this case. An examination of those cases will demonstrate that they are not applicable to the case at bar. The application and the issuance of the writs in those cases were all predicated upon the refusal to perform a duty, which the law required to be performed. In State ex rel. v. Schnecko, 11 Mo. App. 165, it will be observed that the person applied for certain credits upon his taxes, and there was a statute which required the collector to give such credits. So in the case of State ex rel. v. Burkhardt, 59 Mo. 75, two parties were claiming the money of the defendant collector. Relator claimed that the money was collected for the school district of which he was treasurer and that the collector refused to pay it over. The case of State ex rel. v. Dougherty, 45 Mo. 294, is similar to the Burkhardt case, supra. The collector in this case refused to obey the commands of the statute requiring him to pay over money. In the case of State ex rel. v. Riley, 85 Mo. 156, it was the issuance of a writ of mandamus directed to the clerk of the county court, requiring him to perform his duty in respect to extending and assessing the school taxes. He was required under the statute to perform that duty and refusing to do so, mandamus was the proper remedy. The same may be said of all the cases cited, that the duty was one directed by statute, and failing to perform it, mandamus could appropriately be resorted to.

That is not this case. To issue the writ in this case would be compelling the collector to do something not only not provided by the statute, but to do an act which the law prohibits him from doing—the altering and changing of the tax books. The action of the trial court was right and will not be disturbed by this court.

As to the other proposition, as to what district these taxes should properly go, it is unnecessary to determine that question, and perhaps it would be better to wait until that question in a proper proceeding is before the court; I will say, however, speaking for myself, individually, and not for the court, that it depends upon the form and manner of assessment. Section 9144, Revised Statutes 1899, provides that the ''assessor or his deputy or deputies shall call at the office, place of doing business or residence of each person required to list property, and shall require such person to make a correct statement of all taxable property owned by such person, or *under the care, charge* or management of such person.'' Under this provision, the guardian or curator of a minor may have the personal assets of the minor's estate assessed to him, as indicated in the case of State ex rel. v. Burr, 143 Mo. 209; he having the property of the minor under his management and control. If this is done, we think clearly the taxes on this character of assessment would go to the district in which the guardian resides; for, in that assessment, he treats the property as his own and is personally liable for the taxes and has it assessed to him individually. On the other hand, if the personal estate is assessed to the minor or the estate of the minor, the taxes apportioned to the districts would follow the domicile of the minor. The provision of the statute requiring the taxpayer to list not only his own property but also the property ''under his care, management and control'' does not necessarily require a guardian of a minor to make out two lists, one of his individual property and one for the property of his ward; but he may, as is frequently done under the broad provisions of the statute, list it as his own. In the case of State ex rel. v. Burr, supra, GANTT, J., speaking for the court, says: ''That the 'care and management of the ward's estate' conferred by the statute, is such 'care, charge and management' of the estate as is contemplated by the revenue law, we think can not be disputed and is such as makes it incumbent upon him to list it to the assessor. If listed

by and assessed to the curator it is his personal duty to pay the taxes out of the moneys in his·hands as curator.'' Hence, we see that the ownership of the property as indicated by the assessment has a strong bearing upon the question as to the apportionment of the taxes to the school districts. Will say, however, we do not mean by the views herein expressed, that if the minor has a settled place of residence, the guardian has the absolute power, by reason of residing in another school district, to defeat the district in which the minor resides out of its taxes upon the property of the minor. For it is the policy of the revenue law to assess property to the true owner and the assessor has ample authority to ascertain the true owner of the property and make his assessment accordingly.

. The assessor, as to the personal·assets of a *minor,* may assess it to the minor or to his estate, or he may permit the curator of the ward to list it under the statute heretofore discussed, as his property, it being under his management and control; in either event, the domicile of the person to whom·the property is assessed would indicate the school district to which the taxes should be extended.

The opinion of the learned trial judge, filed in this cause, fully sustains the action of the court in denying the writ. The judgment will be affirmed. All concur.