Michael v. The City of St. Louis.

MICHAEL et al., Appellants, v. THE CITY OF ST. LOUIS
et al.

### In Banc, December 12, 1892.

1. **Equity**: LOCAL ASSESSMENTS: MULTIPLICITY OF SUITS. Different lot-owners seeking to be relieved from local assessments may, to prevent multiplicity of suits, unite in one equitable proceeding, where there is a community of interests in the questions to be decided.

2. **Street Opening**: BENEFITS: COLLATERAL ATTACK. Whether property assessed with benefits in a street-opening proceeding was in fact benefited by the street improvement, and the extent of such benefit, if any, are not triable in a suit to enforce the tax bills. (*City of St. Louis v. Ranken,* 96 Mo. 677.)

3. ———: ———: ———. Such questions are determinable only on the commissioners' report in the condemnation proceeding.

4. ———: ———: ———. So the question whether the city had, before the condemnation proceeding, acquired the property sought to be condemned could only be tried in such proceeding, and is not open for consideration in a suit to enforce the tax bills, or to enjoin their collection.

5. ———: ———: ———: NOTICE: MULTIPLICITY OF SUITS. An averment in a petition by various lot-owners, to enjoin the collection of benefit assessments on their property, made in a street-opening case, that "plaintiffs were not parties to the condemnation proceedings, had no notice thereof, and were, therefore, unable to prevent or protest against the wrongful acts committed in said proceeding," in the absence of any pleading of the ordinance regulating the giving of notice, does not show that the cause of action is the same as to all the plaintiffs, or that the city failed to give the notice required by the ordinance, and that the action is properly brought to avoid a multiplicity of suits.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*Cecil V. Scott* for appellants.

(1) Plaintiffs' amended petition manifestly states a cause of action. (2) The prevention of vexatious litigation and of a multiplicity of suits constitutes a favorite ground for the exercise of the jurisdiction of equity by way of injunction. 1 High on Injunctions [2 Ed.] sec. 12, p. 11; *Biddle v. Ramsey*, 52 Mo. 159. (3) Where no defect appears upon the record of the proceedings which constitute the cloud upon the title, and the defect can only be made to appear by extrinsic evidence, the aid of a court of equity may be invoked to remove the cloud. *Clark v. Ins. Co.*, 52 Mo. 272; *Mason v. Black*, 87 Mo. 344. (4) When there is an offer or attempt to dedicate land for public use, followed by adverse use by the public, no formal acceptance by corporate officers is required. *Price v. Town of Breckenridge*, 92 Mo. 378; *Kemper v. Collins*, 97 Mo. 644. (5) The assessments, though void, being an apparent lien on the land, injunction will lie to prevent their collection. *Bank v. City of Kansas*, 73 Mo. 559; *Society v. Hudson*, 85 Mo. 32; *Hays v. Davis*, 75 Mo. 250; *State ex rel. v. Phillips*, 97 Mo. 339. (6) The right of each owner to defend, if suit for collection of said assessment be brought, is not a complete or adequate remedy at law. He has a present right to have the apparent cloud upon his title removed. (7) Where a court of equity can maintain the case for any purpose it will proceed to do full justice between the parties. *Saving Ass'n v. Collonius*, 63 Mo. 292; *Holloway v. Holloway*, 97 Mo. 628; *Humphrey v. Milling Co.*, 98 Mo. 553.

*Leverett Bell* for respondents.

(1) This action cannot be sustained on the ground of preventing a multiplicity of suits. Under the charter

of St. Louis, there can be but one action in favor of the city against each one of the plaintiffs, namely, an action on the special tax bill assessed against the particular lot; and the objections here made to the proceedings to open Kosciusko street are proper matters of defense in that action, and can there be litigated and determined.    2 Revised Statutes, p. 2120; section 5, article 6, of the Charter of St. Louis; *St. Louis v. Richeson*, 76 Mo. 470; *St. Louis v. Ranken*, 96 Mo. 497. (2)   The plaintiffs have an adequate remedy at law, and the bill was properly dismissed.    *Williams v. Haynes*, 78 Ga. 133; *Dows v. Chicago*, 11 Wall. 108. (3)   The plaintiffs have no united or common interest in the same property.    Each is a separate owner of a separate lot.    There is no community of interest in the subject-matter of the suit, authorizing them to sue together.    *Coulson v. Harris*, 43 Miss. 728.

BRACE, J.—This is an action to enjoin the collection of certain several assessments for benefits to the property of plaintiffs, in the matter of the opening of Kosciusko street in said city.

The plaintiffs in their petition, after reciting the proceedings for the condemnation of property for the purpose of showing the amount of damages, and to whom awarded, the amounts severally assessed against the property of plaintiffs for benefits, and the issuance of special tax bills against the property of each of them for the amounts so assessed, allege for their cause of action that the condemnation proceeding was unlawful "for the reason that said part of Kosciusko street had, long prior to the filing of said petition, been dedicated by the owners of said property to said city, and by the said city appropriated and used as a public street for more than thirty years last past, with the consent of all the persons who formerly owned the property so

appropriated and used; that the commissioners in said
condemnation proceedings committed error in award-
ing damages to the parties to whom damages are
therein awarded for the reason that said parties, nor
any one of them, were the owners then or at any time,
of the property so pretended to have been condemned,
and for the further reason that the parties through and
under whom they pretended to claim had long since
relinquished said property to the said city, and acqui-
esced in the use by the city of said property as a public
street.   Said plaintiffs further say that they were not
parties to said condemnation proceedings, had no
notice thereof, and were, therefore, unable to prevent
or protest against the wrongful acts committed in said
proceedings; that said special tax bills are a cloud
upon the title of the property of these plaintiffs against
which said special tax bills, being so in the hands of an
officer of the law for collection, these plaintiffs and
others against whom such tax bills have been issued
are being and will be harassed by demands of said
collector for the payment thereof, and subjected to a
multiplicity of suits by said collector.'' Wherefore
plaintiffs say that they have no sufficient or adequate
remedy at law and pray that the city and its officers be
enjoined from suing upon or collecting said special
tax bills.

A general demurrer to the petition was sustained
by the court below, and from the judgment entered
thereon the plaintiffs appeal.

The charter provisions and ordinances under which
the benefits were assessed against the property of the
plaintiffs in this case came under the consideration of
this court in the recent case of *City of St. Louis v.
Ranken*, 96 Mo. 497, and we there held that, when a tax
for benefits is to be assessed under those provisions
and ordinances, the owner has the right to be heard

upon the question of the amount to be assessed against his property before a charge therefor finally attaches to his property and to notice of such right, such as is appropriate to the nature and character of the proceeding; that the notice provided for in the ordinances of the city is sufficient notice, and when the owner is so notified and the circuit court has taken final action upon the report of the commissioners, and the assembly has appropriated the money to pay the damages for the property taken, the assessment becomes final and conclusive upon the question of benefit to the taxpayer, and, if such notice be not given, the assessment is void.

The plaintiffs set out in their petition facts which if they had been presented to the court in the proper manner, and in time during the pendency of the condemnation proceeding in the circuit court would have precluded the assessment of any benefits against their property. The proceedings of that court are matters of record. It is essential to a valid assessment that the record of the court show that the plaintiffs were duly notified in the manner provided in the ordinances, or voluntarily appeared to the proceeding; if it is not so shown, the assessment is void, and there can be no recovery upon the tax bill. In the suits which they complain the city is about to institute for the collection of such tax bills they have a full, complete and adequate defense of record, without any necessity for resort to extrinsic evidence to make it good, or for invoking the assistance of the powers of a court of equity. Each of the plaintiffs, if the fact of want of notice to him be true, has this defense, complete and independent, for himself; it is neither strengthened nor weakened by that of either or all of his other coplaintiffs, or any number of them, and they have no interest in common to be protected by it; each can

make it for himself, and neither can make it for the other; nor does it matter to any of them whether another makes it or not. One suit will decide it for each of them; consequently there is no more ground for the interposition of a court of equity to protect any of them on the ground that either or any of them may otherwise be harassed by a multiplicity of suits, than for the purpose of preventing a cloud by way of incumbrance upon the title to their property, which, upon their own theory of the facts in the case, would long since have been dissipated, in the due and ordinary course of proceeding under the law, had they not interposed to restrain it.

The judgment is affirmed. All concur.

### IN BANC ON REHEARING.

BRACE, J.—On reargument *in banc* the conclusion reached in the foregoing opinion heretofore handed down in division number 1, that the judgment of the circuit court be affirmed, is concurred in by all the judges except SHERWOOD, C. J., who dissents; BARCLAY, J. and the writer concurring in this opinion, which is refiled, and the other judges in a separate concurring opinion by BLACK, J.

SHERWOOD, C. J. *(dissenting)*.—I. I am of the opinion that the petition states facts sufficient to constitute a cause of action. I understand the rule to be that, where one general right is claimed, a bill in equity will not be deemed multifarious, though all are joined therein who demand equitable relief against some threatened injury to, or interference with, that common right. This rule has been often applied or recognized in this state as to ordinary taxation, where one taxpayer on behalf of himself and of others similarly situ-

ated invoked the aid of a court of equity to enjoin the collection of a void and illegal tax. *Newmeyer v. Railroad*, 52 Mo. 81; *Rubey v. Shain*, 54 Mo. 207; *Ranney v. Bader*, 67 Mo. 476; *Overall v. Ruenzi*, 67 Mo. 203.

This interference is based upon the doctrine of preventing a multiplicity of suits, and this foundation gives jurisdiction regardless of whether *each separate land-owner has some kind of legal remedy of his own* which he may offer in resistance of the tax. 1 Pomeroy on Equity Jurisprudence, sec. 260; Cooley on Taxation, 761.

The same doctrine that is applied to general taxes is also applied to special assessments, and clearly the same cogent reason would apply to the latter case as well as to the former; and so are the authorities. 1 Pomeroy on Equity Jurisprudence, sec. 260, and cases cited.

No doctrine is more firmly rooted in equity jurisprudence than that one plaintiff, for himself and others similarly situated, may file a bill based upon a general right and seeking equitable relief, and that such bill is not demurrable, although the defendants have *separate and distinct defenses*. *Parish v. Sloan*, 3 Ired. Eq. 607; *Brinkerhoff v. Brown*, 6 Johns. Ch. 139. To the same effect see *Bobb v. Bobb*, 76 Mo. 419, and cases cited. In *Ward v. The Duke*, 2 Anst. 469, it was ruled that *unconnected parties* might be joined in one suit, "where there *is one common interest among them all, centering in the point in issue in the cause.*"

II.   But it is said that the allegation of lack of notice on the part of plaintiffs as to the condemnation proceedings is insufficient, because it is *too general*. How it could be more specific it is difficult to see. If they had *no notice*, it appears to me that is the end of the matter. What matters it if one plaintiff was entitled to be personally served under

an *ordinance*, and another under a *general publication*, provided that in *either* and *all* of the ways mentioned no *service was had?* This allegation of *no service* is broad enough, in my opinion, to include all the various means whereby the different parties plaintiff could have been brought into court.

This *common right*, to ask injunctive relief, is not based at all upon the *various methods* by which the parties plaintiff *might* have been brought into · court, but upon the common right which each one possessed to be relieved against unjust taxation; taxation without notice, which cast a cloud upon each of their respective titles, that is the only basis and sole foundation of their right to come into a court of equity, and does not rest upon the fact that they were required to be notified by *different methods, which methods, various howsoever, were never pursued.* To me it sounds passing strange that parties plaintiff claiming a common right, and claiming that they had received no notice whatever in proceedings had against them, in order to make their pleading good, would have to go further and to specify with scrupulous care how or in what way each one of them *was not served* with notice.

III. But granting that I am wrong in this; granting that the bill should have been more specific, is it, therefore, obnoxious to an attack made upon it by a *general* demurrer? I hold not. I understand that a petition is impregnable to such an attack, unless after judgment that judgment would have been arrested because the petition did not state facts, etc., something of which advantage could be taken even in an appellate court.

At the worst, the petition contains a defective statement of a cause of action, and not a statement of a defective cause of action. Under our code, general averments in a pleading, as we have here, *cannot be*

*reached by demurrer at all;* but can only be reached by a motion to make the pleading more definite and certain. 1 Revised Statutes, 1889, sec. 2057; *Atteberry v. Powell*, 29 Mo. 434; *State ex rel. v. Oddle*, 42 Mo. 215; *Poe v. Domec*, 48 Mo. 444; *Meyer v. Chambers*, 68 Mo. 627; *Edmonson v. Phillips*, 73 Mo. 63; *State to use v. Berning*, 74 Mo. 100; *Long v. Long*, 79 Mo. 650; *Spurlock v. Railroad*, 93 Mo. 539.

Touching the point in hand, Judge Bliss observes: "It should be borne in mind—and this will help to reconcile conflicting decisions and *dicta*—that a pleading may be so uncertain and indefinite as to be subject to correction on motion, and still be good on demurrer. The usual ground upon which the demurrer is based is that it does not state facts sufficient to constitute a cause of action, or defense, as the case may be; and, in passing upon the demurrer, the court will only inquire whether it can gather from the pleading the requisite facts, however loosely or defectively stated. To be subject to demurrer, it 'must present defects so substantial in their nature, and so fatal in their character, as to authorize the court to say—taking all the facts to be admitted—that they furnish no cause of action whatever.' The objection, then, to the pleading an account of this uncertainty and indefiniteness is said to be waived by demurrer, that is, it cannot be raised by a demurrer." Bliss on Code Pleading [2 Ed.] sec. 425a. It is scarcely necessary to add that these views of the learned author are sustained by a great array of authorities from the code st os, as shown by the accompanying note to the section quoted.

In conclusion, then, I hold the petition is well enough on the ground that it seeks relief to prevent the invasion of a right common to all the plaintiffs; that it seeks to avoid a multiplicity of suits; and that its alle-

gations, however general or indefinite in their nature, are good against the demurrer filed; and so I am constrained to dissent.

### SEPARATE OPINION.

BLACK, J.—Mr. Pomeroy, in speaking of these suits by lot-owners to be relieved from local assessments, and by taxpayers to be relieved from general assessments, says there is no pretense of any common property or other common right among the plaintiffs as individuals, or between them as a body, and the defendant. He then says: "The only community among them is in the question at issue to be decided by the court; in the mere external fact that all their remedial rights arose at the same time, from the same wrongful act, are of the same kind, involve similar questions of fact, and depend upon the same questions of law." 1 Pomeroy on Equity Jurisprudence [2 Ed.] sec. 260. Such a community of interest in the questions to be decided is now generally held to be sufficient to call for the exercise of equitable jurisdiction to prevent a multiplicity of suits in this class of cases, and to this doctrine we agree.

We then come to these questions: *First*, whether the facts stated in the petition, the demurrer admitting them to be true, defeat the collection of the tax bills; *second*, whether these facts present the same questions of law as to all of the plaintiffs.

The facts alleged are that Kosciusko street was a public highway when and long before the suit to condemn was commenced; that the property proposed to be taken had been before dedicated by the owners thereof to the city for a street; and for these reasons the persons to whom the commissioners assessed damages were not entitled to any damages. It is also.

alleged that these persons to whom damages were allowed as for property taken had long before relinquished the property to the city for street purposes.

Under this state of facts it is manifest that the plaintiffs should not be assessed with benefits to pay the assessed damages. The property-owners, having dedicated their land to the city for street purposes, were not entitled to any damages. But the question then arises, where should this issue be tried? Can it be tried in a suit like this, or should it have been tried in the proceedings to condemn the property? It was held in *City of St. Louis v. Ranken*, 96 Mo. 497, that the questions whether the property assessed with benefits was in fact benefited by the improvement, and if benefited to what amount, could not be raised or tried in a suit to enforce the tax bills. Such questions were determined and forever set at rest by the judgment on the commissioners' report in the proceedings to condemn. That case was followed in *City of St. Louis v. Excelsior Brewing Co.*, 96 Mo. 677. So the question whether the city had before acquired the property sought to be condemned was one which could and should have been tried in the proceedings to condemn. It would not be open for consideration in suits to enforce the tax bills, nor is it open for consideration in this case. Thus far there is no cause of action stated in the petition.

If the petition states any cause of action it is in the general averment that "the plaintiffs were not parties to the condemnation proceedings, had no notice thereof, and were, therefore, unable to prevent or protest against the wrongful acts committed in said proceedings." It is to be observed that the petition sets out at length the facts, to the general effect, that the property condemned had been before dedicated to public use for a street, and then follows this general

averment as to want of notice. The object of this averment is well stated in the motion for a rehearing, filed by the plaintiffs. It is there said: "The allegations of want of notice are for the purpose of excluding any assumption or inference of acquiescence by plaintiffs in such proceedings, if such fact would in any way cut any figure." I readily agree that the tax bills are void if the city failed to give the notice required by the ordinance. But that ordinance is not pleaded, and we do not know what it is, or what method it prescribes for giving notice. The notice required may be personal on each person, or it may be one general notice given by publication in a newspaper. The want of notice may arise out of one state of facts as to one plaintiff, and out of another and entirely different facts as to other of the plaintiffs; and the question of law may be different as to each of the plaintiffs. To enable the plaintiffs to join in this suit to prevent a multiplicity of suits, they must set out the ordinances and the facts which show a failure to give the notice, so that it can be seen from the face of the pleadings that the questions of law to be decided are the same as to all of the plaintiffs. In other words they must disclose a case which will call for the exercise of equitable powers to prevent a multiplicity of suits. This they have not done. They have not done this no doubt for the reason that they do not place their cause of action on want of notice. They proceed on the theory that, if the property had been dedicated to street purposes, the ordinance directing the institution of the condemnation suit and all steps taken under it are void. The question whether the property had been before dedicated to public use is one which cannot be tried in a collateral suit like this. For these reasons we agree that the demurrer was properly sustained. GANTT, THOMAS and MACFARLANE, JJ., concur.