**JOHN CALVIN MANOR, INC., a Missouri Corporation, Respondent,**

v.

**James P. AYLWARD, Jr., Collector of Revenue, and John P. Sweeney, Assessor, Appellants.**

No. 57376.

Supreme Court of Missouri,
Division One.

Dec. 16, 1974.

Don M. Jackson, Kansas City, for respondent; Jackson & Sherman, Kansas City, of counsel.

Herbert M. Kohn, County Counselor, Donald B. Clark, Asst. County Counselor, Kansas City, for appellants.

BARDGETT, Presiding Judge.

Defendants-appellants are the collector of revenue and the assessor of Jackson County, Missouri. They appeal from a judgment entered in favor of plaintiff-respondent, a property owner, which judgment permanently enjoined defendants from collecting or attempting to collect real estate taxes which were based upon an increase in the assessed valuation of plaintiff's property from $500 to $225,500 and resulted in a tax bill in the sum of $15,536.95 for the year 1970. The appeal involves the construction of sections 137.-180 and 139.031, RSMo 1969, V.A.M.S., which are revenue laws of Missouri. This court has jurisdiction. Art. V, sec. 3, Mo. Const.1945, V.A.M.S., as amended.

The only fact question in the circuit court was whether or not plaintiff had received notice pursuant to sec. 137.180 that defendant-assessor had raised the valuation of the property. The trial court found that the assessor did not give plaintiff the notice of increase as required by sec. 137.-180 and that plaintiff did not otherwise learn of the increase until plaintiff received its tax statement from the collector in December 1970 which was less than thirty days prior to the date of delinquency (January 1, 1971), as to payment without penalties. That factual finding is not contested here.

Briefly stated the facts are as follows: Plaintiff is the record owner of certain real property in Jackson County, Missouri. Prior to 1969 its assessed valuation was $500. Early in 1969 the assessor raised the assessed valuation to $225,500 and notified plaintiff of the increase and of plaintiff's right to appeal to the county board of equalization. As required by sec. 137.385, RSMo 1969, plaintiff filed his appeal with the board of equalization prior to the third Monday in June 1969. On July 23, 1969, the board of equalization heard the appeal and entered its order nullifying the increase by reducing the valuation to the previous figure of $500 for 1969. Presumably plaintiff's 1969 real estate taxes were computed on an assessed valuation of $500 and were paid.

Sometime after the 1969 tax billings were mailed by the collector in December 1969 and prior to May 31, 1970, the assessor increased the valuation of plaintiff's property on the assessment books from $500 to $225,500 for 1970.[1] The assessor's books were delivered to the collector prior to May 31, 1970. The collector mailed tax statements to the property owners on or about December 8, 1970, and plaintiff re-

---

1. This increase was apparently entered by the assessor on the basis that the board of equalization had reduced the valuation from $225,-500 to $500 in 1969 for that year (1969) only, and according to the custom in Jackson County the higher figure would be rein-

stated for the subsequent year (1970). There is no evidence nor any suggestion that the failure to notify plaintiff of the 1970 increase was for the purpose of deception or any other improper motive of defendants or the board of equalization or any other official.

ceived its statement a day or so later. Plaintiff's tax statement for 1970 showed an assessed valuation of its land and improvements of $225,500 and upon that assessment the tax bill amounted to $15,536.95.

The first notice plaintiff had of the increased assessed valuation was when it received the real estate tax statement in December 1970. The increased valuation is not the result of an overall uniform percentage increase in valuation of all real property in Jackson County but rather pertains only to plaintiff's property. This case does not involve any issue with respect to the value of plaintiff's property as such, nor does it involve the question of whether plaintiff's property is entitled to the charitable exemption from real estate taxes under Art. X, sec. 6, Mo.Const.1945, and sec. 137.100, RSMo 1969.[2]

On December 30, 1970, plaintiff instituted an action in prohibition in circuit court and subsequently plaintiff, believing prohibition was not the appropriate remedy, amended its petition to request relief by injunction. The cause was tried to the court and the court entered its order permanently enjoining defendant collector "from collecting or attempting to collect taxes from the plaintiff, John Calvin Manor, Inc., or its successors in title, for the year 1970 in any amount in excess of the taxes which would be due and payable on said property for the year 1970 on the basis of an assessed valuation of $500.00." The court ordered that defendant-assessor "shall forthwith reduce the assessed valuation of plaintiff's said real property as shown on the books and records of Jackson County for the year 1970 from $225,500.00 to $500.00." The foregoing injunctive order followed the determination by the trial court that the increased assessment and the

tax based thereon was void because of the failure of the assessor to give plaintiff the notice of increased assessment required by sec. 137.180.

On this appeal defendants attempt to avoid the question of whether the increased assessment and the increased tax bill based thereon are valid and undertake to limit the scope of the inquiry to whether or not the remedies at law are adequate under the facts of this case. The remedies at law which defendants contend are adequate and arguably preclude equitable injunctive relief are (1) a suit by the taxpayer under sec. 139.031 which permits the taxpayer to pay the tax under protest and institute suit within ninety days for a refund, and (2) await suit for collection and defend that suit on whatever grounds the taxpayer has for claiming the increased assessment and consequent tax bill to be illegal.

By so defining the scope of this appeal, the defendants thereby avoid the substantive issue which is whether the failure to give the required notice under sec. 137.180 rendered the increased assessment void. That issue cannot be so easily avoided because the consequence of failing to give the required notice places the taxpayer in a markedly different position than if proper notice is given and bears directly on the adequacy of the remedies argued for by defendants.

The facts relating to the 1969 increased assessment with notice to the property owner and its appeal to the board of equalization have been set forth supra in order to show what can happen, and in this taxpayer's case what did happen, when the assessing and taxing authorities adhere to the orderly procedures mandated by the legislature. The facts of the 1970 in-

2. Although it appears from the record and the briefs that the order of the board of equalization in 1969 reducing the assessed valuation from $225,500 to $500 may have resulted from a decision by that board to continue with plaintiff's charitable exemption rather than a decision with respect to the value of plaintiff's property as such, the question of plaintiff's entitlement to such an exemption is not an issue as to the assessment for taxes for 1970. That issue is presently before this court in the case of John Calvin Manor, Inc., v. State Tax Commission, No. 58414, and involves the year 1971.

creased assessment show what happens when the statutory procedures are not followed by the responsible authorities. It is apparent that the failure to give the notice required by sec. 137.180 completely frustrates the statutory scheme at the very outset. Without this notice to the taxpayer, the taxpayer remains ignorant of the increased valuation put upon the taxable property and consequently does not have the opportunity to appeal to the board of equalization during the limited period allowed for such appeals.

In the instant case the increased valuation, of which plaintiff was ignorant, was 450 times the previous assessed valuation and amounted to approximately a 45000% increase. The record does not reflect the amount of plaintiff's tax for 1969 nor whether the rate in 1970 was the same as 1969; but plaintiff's tax bill for 1970 was $15,536.95 and it is obvious that this was many times again the tax bill for 1969 on the same property, and that this increase in taxes was due to the increased assessed valuation.

▇ Defendants argue that sec. 139.031, RSMo 1969, provides an adequate remedy at law. That statute permits a taxpayer to protest all or part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri, by paying the tax and filing suit for refund in circuit court.

Sec. 139.031 provides the taxpayer with a procedure whereby he can obtain an adjudication of the legality of a tax imposed upon him. As applied to the instant case, a suit under sec. 139.031 would have placed the same issues before the court as were decided in this case, and insofar as providing a proceeding for the adjudication of these issues is concerned, such a proceeding would be wholly adequate.

Defendants acknowledge that prior to the enactment of sec. 139.031 a suit in equity for injunctive relief was allowed in cases similar to the instant one. Wymore v. Markway, 338 Mo. 46, 89 S.W.2d 9 (1935); Allen v. Roam, 308 S.W.2d 787 (Mo.App.1958); Boonville Nat. Bank v. Schlotzhauer, 317 Mo. 1298, 298 S.W. 732 (banc 1927); Bowman v. City of East Prairie, Mo.App., 240 S.W.2d 203 (1951). In *Bowman* the court held that a suit for injunctive relief was proper to restrain the collection of unauthorized taxes under the provisions of sec. 526.030, RSMo 1969, which authorizes such a proceeding in cases where a cloud would be put upon the title to real estate, the court holding that assessed taxes created a lien upon the real estate and constituted a cloud upon the title. The same is true of the real estate taxes assessed in the instant case. Chapter 141, RSMo 1969.

The question then becomes whether the enactment of sec. 139.031 was intended to abrogate the remedy for injunctive relief and to constitute a complete substitute therefor. Although this is not a suit for a refund but rather one to enjoin collection, we believe the issues presented by defendants should be met and decided.

Prior to the enactment of sec. 139.031, one of the issues in cases where a plaintiff paid the taxes and thereafter instituted suit contending the tax was illegal and sought a refund was whether the taxes were paid voluntarily or under duress. State v. Howard, 357 Mo. 302, 208 S.W.2d 247 (banc 1947); McGraw-Edison Company v. Curry, 485 S.W.2d 175 (Mo.App.1972). The enactment of sec. 139.031 removed this question from such cases by affording the taxpayer the right to voluntarily pay the tax and thereafter obtain a refund on a finding that the tax was unlawful without proving payment under duress.

Also prior to the enactment of sec. 139.031, a collector of taxes was not required to accept payment of a portion of the taxes due and courts were without authority to relieve the taxpayer of interest and penalties occurring during the litigation over the validity of the tax by allowing the disputed

tax to be paid into the registry of the court. American Airlines, Inc., v. City of St. Louis, 368 S.W.2d 161 (Mo.1963); Stein v. State Tax Commission, 379 S.W.2d 495 (Mo.1964).

At the time American Airlines, *supra*, and Stein, *supra*, were decided, as stated, there was no statute that authorized a taxpayer to pay the taxes under protest. Sec. 139.031 allows a taxpayer to pay the tax under protest, and orders the collector to accept taxes so paid. The payment under protest, being under statutory authority, constitutes payment and prevents the accrual of interest and penalties during the pendency of the litigation over the validity of the tax. Thus it is seen that sec. 139.-031 affords the landowner a method whereby he can litigate the legality of the tax and avoid interest and penalties should the decision go against him.

It does not appear, however, that the legislature intended to abrogate those remedies existing prior to the enactment of sec. 139.031 nor to make the procedure set forth in sec. 139.031 the exclusive remedy available to a taxpayer. Had the legislature intended to make the procedure set forth in sec. 139.031 the exclusive remedy, we would be confronted with a serious due process claim in cases such as the instant one, where the taxpayer, having been deprived of the statutory notice of the increased assessed valuation and thereby totally deprived of a hearing before the board of equalization and all of his administrative remedies, would have to pay a very substantial sum in order to even question the legality of the assessment.

At 72 Am.Jur.2d, State and Local Taxation sec. 782, p. 100, it is stated, "A property owner must at some time have an opportunity, as a matter of right and not of grace, to appear and be heard on the question of valuation before some tribunal which has jurisdiction to determine the true value of the property." Security

Trust Co. v. Lexington, 203 U.S. 323, 27 S.Ct. 87, 51 L.Ed. 204 (1906).

To sustain defendants' position it would be necessary that the circuit court have jurisdiction to provide substantially the same relief that a property owner could obtain from a county board of equalization and the state tax commission. The boards of equalization have the power, inter alia, to reduce the assessed valuation of property when, in their opinion, the valuation returned is higher than the average for the county, secs. 138.050, 138.100, RSMo 1969, and on appeal to the state tax commission, that commission has the authority to "correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious." Sec. 138.430, RSMo 1969.

 "Assessments and the valuations of real estate for taxation are never subject to exact ascertainment, and they are, at best, matters of opinion and estimate on the part of the taxing officials." May Department Stores Co. v. State Tax Commission, 308 S.W.2d 748, 759 (Mo.1958). While the decisions of the tax commission are subject to judicial review under the provisions of chapter 536, RSMo 1969, the circuit court does not have the authority to substitute its opinion as to value for the opinion of the administrative agency upon record evidence under which different conclusions might be drawn in the exercise of administrative discretion. Drey v. State Tax Commission, 345 S.W.2d 228, 236 (Mo.1961); Koplar v. State Tax Commission, 321 S.W.2d 686, 697 (Mo.1959); State ex rel. Kahler v. State Tax Commission, 393 S.W.2d 460, 466 (Mo.1965).

 In short, the circuit court does not have the power to afford the same or similar relief to a landowner that the board of equalization and the state tax commission have. Sec. 139.031 does not invest the court with discretionary authority to fix the value or assess the property at any specific amount. The foregoing is set forth in order to demonstrate that sec. 139.031 is

**64**

not a substitute for the long-standing provisions in law relating to the assessment of property for tax purposes.

The court holds that sec. 139.031 is not the exclusive remedy available to a taxpayer who desires to contest the legality of an increased assessed valuation placed upon his property where he has been totally deprived of his administrative remedies by the assessor's failure to give him the notice required by sec. 137.180. The traditional action in equity to enjoin collection of the tax has not been abrogated by sec. 139.031. This case clearly demonstrates the need for the retention of equitable jurisdiction and the availability of injunctive relief, for here the entire statutory scheme for the assessment of property for tax purposes was vitiated at the outset by the assessing authorities and resulted in an enormously increased tax statement being rendered to plaintiff.

■ Defendants also contend that the plaintiff has an adequate remedy by awaiting suit to enforce the tax and making whatever defenses he has at that time. The divisional opinion in Michael v. City of St. Louis, 112 Mo. 610, 18 S.W. 967 (1891), cited by the defendants, appears to support this position. However, that case was reargued in the court en banc and is reported at 112 Mo. 610, 20 S.W. 666. The court en banc affirmed the circuit court's dismissal of plaintiffs' petition, as did the divisional opinion. However, in a concurring opinion, four of the judges upheld the taxpayers' right to maintain a suit in equity to enjoin the collection of the assessment therein involved, but affirmed the dismissal of the petition on the ground that it did not allege facts so that it could be seen from the pleadings that the question of law to be decided was the same as to all of the plaintiffs. The statement appearing in the divisional opinion to the effect that a taxpayer must await suit for enforcement of the assessment was not adopted by the court en banc. The point is overruled.

In McGraw-Edison Company v. Curry, supra, the Jackson County Board of Equal-

ization raised the valuation of plaintiff's inventory but gave no notice of the increase to plaintiff. Plaintiff's first knowledge of the increase came by way of a tax statement received in December 1967 when the revaluation was a fait accompli and the effective time to seek administrative review had long since passed. The court there said, loc. cit. 485 S.W.2d 180:

". . . [T]he rule as stated in Gas Service Co. v. Morris, Mo.Sup., 353 S.W.2d 645 supra, that procedural requirements as enunciated by the Legislature before administrative agencies must be strictly complied with, should apply with equal force to legislative requirements imposed upon county boards of equalization. Such boards are statutory tribunals and derive their jurisdiction, powers and duties from the statutes. State ex rel. Lane v. Corneli, supra [351 Mo. 1, 171 S.W.2d 687 (1943)]. The Legislature in Section 138.120(2) V.A.M.S. placed the mandatory (shall) duty upon the Board of Equalization to give the plaintiff the notice and that such notice was to contain certain specific facts and information. The Supreme Court in State ex rel. Wilson Chevrolet, Inc. v. Wilson, supra [332 S.W.2d 867 (Mo.1960)], and State ex rel. Lane v. Corneli, supra, declared such notice to be jurisdictional. It is neither logical nor morally justifiable that such a state agency be permitted to disregard such definite legislative directions and still retain any defense to an action to correct its void revaluation order, either upon the theory of governmental immunity or failure of plaintiff to exhaust administrative remedies.

"Indeed it can be stated that the void order of the Board was 'not subject to administrative review' as contemplated by Section 536.150 V.A.M.S. and Rule 100.08, Rules of Civil Procedure. Plaintiff was given no notice and therefore afforded no opportunity to either contest the void revaluation order before the Board or ask for administrative review before the State Tax Commission."

The McGraw-Edison Company decision is applicable to this case. Where, as here, the failure to give notice of the increased assessment prevents the taxpayer from pursuing his administrative remedies, the increased assessment made by the assessor is void and, consequently, so is the tax computed thereon, and the circuit court was correct in so holding.

Defendants contend that the circuit court erred (1) in requiring the assessor to reduce the assessment on plaintiff's property from $225,500 to $500 because the assessor is without statutory authority to alter assessed valuations following the fifteenth day of May of each year, and (2) in enjoining the collector from proceeding to enforce collection of the tax on the increased assessment because the collector is personally charged with collecting all taxes certified to him by the county clerk, and (3) ordering the reduction from $225,500 assessed valuation to $500 on the grounds that the circuit court has no authority to substitute its judgment for that of the taxing authorities.

The circuit court did not substitute its judgment as to the valuation of the property for that of the assessing and taxing authorities. Upon finding the increased assessment to be void, the circuit court properly ordered the increase stricken from the records and let the prior assessment stand. The orders of the circuit court were necessary to afford complete relief once it was determined that the increased assessment was invalid. The contentions are overruled.

The record does not reflect whether or not plaintiff has tendered or paid taxes on an assessed valuation of $500 for the year 1970. If this obligation has not been satisfied, then plaintiff remains liable therefor together with interest and penalties thereon. Stein v. State Tax Commission, *supra*; American Airlines, Inc., v. City of St. Louis, *supra*.

The judgment of the circuit court is affirmed.

All of the Judges concur.