**UNITED MISSOURI BANK OF KANSAS CITY, Executor of the Estate of Earl H. Laughlin, Jr., et al., Respondents,**

v.

**Joe MARCH, Collector of Revenue, Adair County, Missouri; and Bob Cox, Collector of Revenue, City of Kirksville, Kirksville, Missouri, Appellants.**

No. WD 33144.

Missouri Court of Appeals, Western District.

April 12, 1983.

Harry C. Farr, Farr & Hickman, Kirksville, for appellants.

Philip Dale Barrett, Oswald & Cottey, Kirksville, for respondents.

Before SOMERVILLE, C.J., CLARK, J., and MOORE, Senior Judge.

SOMERVILLE, Chief Judge.

Plaintiffs (respondents)—designated in both the pleadings and the evidence as "assignees of [the] claim and cause of action" of Laughlin Osteopathic Hospital, Inc.— brought an action in equity to enjoin Joe March, Collector of Revenue, Adair County, Missouri, and Bob Cox, Collector of Revenue, City of Kirksville, Missouri, from collecting or attempting to collect taxes for the year 1979 based upon an increase from $134,400.00 to $434,400.00 in the assessed valuation of certain real property owned by Laughlin Osteopathic Hospital, Inc.

Due to the increase in the assessed valuation of the property for the year of 1979, Joe March, County Collector of Adair County, Missouri, claimed $15,990.00 was due in additional taxes and Bob Cox, Collector of Revenue, Kirksville, Missouri, claimed $4,080.00 was due in additional taxes.

The trial court entered judgment enjoining the respective collectors from collecting or attempting to collect taxes from Laughlin Osteopathic Hospital, Inc., or its successors in title, "for the year 1979 in an amount in excess of the taxes which would be due and payable on said property for the year 1979 on the basis of an assessed valuation of $134,400.00." Defendant—collectors (appellants) took an appeal. Respondent's motion to dismiss same, heretofore taken with the case, is overruled.

▪ Throughout the case, compliance vel non by the Adair County Assessor with Section 137.180, RSMo. 1978, has been the pivotal issue. This section reads as follows: "Whenever any assessor shall increase the valuation of any real property he shall forthwith notify the record owner of such increase, either in person, or by mail directed to the last known address; every such increase in assessed valuation made by the assessor shall be subject to review by the county board of equalization whereat the land owner shall be entitled to be heard, and the notice to the landowner shall so state." Compliance with the notice provision of § 137.180, supra, is mandatory and failure by an assessor to give the requisite notice of an increase in the assessed valuation of property renders any increase in valuation and any tax computed thereon void. *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974).

Respondents, in their petition for injunctive relief, plead that Donald Western, Assessor of Adair County at the time in question, did not give notice of the increase in valuation of the property for the year 1979 as required by § 137.180, supra, and therefore the increased assessment and tax computed thereon were void.

The parties stipulated that service of the notice required by § 137.180, supra, could properly be had upon "Earl H. Laughlin, Jr., Grace Sawyer, Ken Turner or Jack Auxter, officers of the Corporation, or upon Dale Barrett, registered agent, or by leaving the notice at the business office of the Corporation at 900 East La Harpe, Kirksville, Missouri, with Norman Parker the person in charge thereof."

The parties further stipulated that Earl H. Laughlin, Jr., died after suit was filed and Donald Western, Assessor of Adair County at the time in question, died before suit was filed.

Respondents, in support of their petition, introduced the following evidence at trial.

Jack McLain, who, on the last day in 1979, succeeded Donald Western as Assessor of Adair County, testified that he searched all the records in the Adair County Assessor's Office and found nothing indicating that Donald Western gave notice to Laughlin Osteopathic Hospital, Inc., or any of its officers or agents, that the assessed valuation of the property for the year 1979 was increased.

Jack Auxter (named in the stipulation, supra), osteopathic surgeon and secretary of Laughlin Osteopathic Hospital, Inc., during 1979, testified that he was custodian of and searched the books and records of the Cor-

poration and failed to find any notice of an increase in the assessed valuation of the property for the year 1977; and, further, that he personally was never served with notice or told that the assessed valuation of the property had been increased for the year 1979.

Ken Turner (named in the stipulation, supra), a director of Laughlin Osteopathic Hospital, Inc., in 1979, testified that he never received any notice, written or oral, that the assessed valuation of the property had been increased for the year 1979.

Norman Parker (named in the stipulation, supra), testified that during 1979 and for several years prior thereto he was business manager of Laughlin Osteopathic Hospital, Inc.; that on behalf of the corporation he dealt with the Adair County Assessor regarding all real and personal property tax matters; that it was the custom and practice of Donald Western, deceased Assessor of Adair County, to come to the corporation's office in January of each year and discuss with him (Parker) any increase in the assessed valuation of the corporation's real property; that Donald Western would orally advise him at such times if the valuation of any of the corporation's property was going to be increased and Donald Western, shortly thereafter, would confirm any increase in writing to Parker; that when Donald Western came to see him (Parker) in January of 1979 he made no mention of any increase in the assessed valuation of any of the corporation's real property for the year 1979 and never notified him (Parker), orally or in writing, that the assessed valuation of the real property in question was increased for the year 1979; he searched the records of the corporation and found no written notice from the assessor increasing the assessed valuation of the property for the year 1979; and his first knowledge that the assessed valuation of the property had been increased for the year 1979 was when he received the tax statement in the fall of 1979.

Grace Sawyer (named in the stipulation, supra), testified that she was never served with notice or informed that the assessed valuation of the property in question was increased for the year 1979.

Marilyn Riley, called as a witness by appellants, testified that she "worked for the county clerk"; that sometime in October of 1979, after the "tax statements" were mailed out, she received a call from a secretary in the law office of Oswald & Cottey (Dale Barrett, named in the stipulation, supra, was an associate of the firm) wanting to know why Laughlin Osteopathic Hospital, Inc. hadn't been notified "that their taxes had been raised." Although no burden rested upon them to do so, it is parenthetically noted that appellants offered no evidence that the Adair County Assessor gave any notice, oral or written, to Laughlin Osteopathic Hospital, Inc., its officers or agents, or to any one whomsoever, that the assessed valuation of the property in question had been increased for the year 1979.

Appellants' points on appeal, three in number, patently overlap and all are supported by a common argument. For these reasons they are prime candidates for being distilled into the following point for dispositional purposes: according to appellants there was neither substantial evidence to disclaim the reigning presumption that a public official is presumed to have performed his official duty nor, in light thereof, to support the judgment entered by the trial court.

█ Appellants contend, and rightly so, that Missouri subscribes to the hoary maxim omnia presumuntur rite esse acta. As translated in *Woolridge et al. v. La Crosse Lumber Co.,* 291 Mo. 239, 236 S.W. 294, 297 (1921), "it is to be presumed that everything done by an officer, in connection with the performance of an official act in the line of his duty, is legally done, and, a fortiori, absent proof to the contrary, all things are presumed to have been rightfully and lawfully done." This presumption is not ensconced in a vacuum, and when resorted to its ramifications are manifold. It is a rebuttable rather than a conclusive presumption; it puts the burden of going forward with some substantial evidence on the party presumed against and when some substan-

tial evidence is produced by the party presumed against, "however slight", the presumption disappears and the trier of facts receives the issue free of the presumption. *State ex rel. Christian v. Lawry,* 405 S.W.2d 729, 730 (Mo.App.1966), and cases therein cited.

The crux of appellants' argument is that respondents failed to produce even a scintilla of evidence that Earl H. Laughlin, Jr., and Dale Barrett, named in the stipulation as proper recipients of notice from the assessor if one was given, failed to receive the statutory mandated notice. Building upon this argumentative foundation, appellants contend the presumption favoring public officers which they rely on prevailed, and, ipso facto, respondents' case was devoid of substantial evidence to support the relief prayed for. Appellants' argument is fatally defective because it distorts, albeit in a myopic fashion, the true issue on appeal and the evidentiary course pursued by respondents in undertaking their burden of proof. Contrary to appellants' misconceived notion, respondents, in meeting their burden, were not restricted to proof that none of the stipulated recipients received notice. The ultimate, controlling issue was whether the assessor gave the required notice which was subject to proof by a broader range of evidence.

In presenting its case, respondents, not only labored under the presumption favoring public officials, but were also required to traverse the treacherous quicksands of proving a negative—failure of the assessor to give the statutory notice that assessed valuation of the property had been increased for the year 1979. Being a court tried case, appellate determination of whether they succeeded is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law". In making this determination, this court is obliged to give respondents the most favorable view of all the evidence and the benefit of all reasonable inferences to be drawn therefrom. *Ayers Plastics Co. v. Packaging Products,* 597 S.W.2d 177, 179 (Mo.App. 1980); *Porter v. Posey,* 592 S.W.2d 844, 849 (Mo.App.1979); and *S.G. Adams Printing v. Central Hardware Co.,* 572 S.W.2d 625, 628 (Mo.App.1978).

Without being unduly prolix, the evidence heretofore iterated put the public official presumption to flight, constituted substantial evidence in support of the relief prayed for by respondents, and, under the proscription of Murphy v. Carron, supra, the judgment rendered by the trial court is insulated from change on appellate review.

Judgment affirmed.

All concur.