

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. JACKSON COUNTY,     )
MISSOURI, ET AL.,                 )     *Opinion issued December 19, 2023*
                                  )
          Relators,               )
                                  )
v.                                )     No. SC100304
                                  )
THE HONORABLE DAVID               )
CHAMBERLAIN,                      )
                                  )
          Respondent.             )

### ORIGINAL PROCEEDING IN MANDAMUS

Jackson County and Jackson County public officials[1] ("County") seek a writ of mandamus ordering the circuit court to vacate its order overruling County's motion to dismiss Jackson County property owners' ("Taxpayers") claims and sustain County's motion to dismiss. Because Taxpayers failed to exhaust all available administrative remedies before filing suit, the underlying action must be dismissed. This Court makes permanent its preliminary writ of mandamus.

---

[1] The following Jackson County officials are parties: assessor, collector, board of equalization chair, board of equalization vice chair, and a board of equalization member.

## Background

In Jackson County—as in all Missouri counties—real property is assessed for tax purposes on a two-year cycle, with the assessor placing values on properties in odd-numbered years. On June 20, 2023, Taxpayers filed a putative class action lawsuit against County[2] alleging its actions resulted in unlawful increases to assessed property values. Specifically, Taxpayers' claims stem from their allegations that County failed to provide notice of the increases by June 15, pursuant to sections 137.180 and 137.355,[3] and failed to conduct physical inspections of properties that increased by more than 15 percent,[4] rendering the increases in assessed value void.[5] County filed a motion to dismiss, arguing, in part, Taxpayers failed to exhaust all available administrative remedies before filing suit. In October 2023, the circuit court overruled County's motion to dismiss.

In the court of appeals, County sought a writ of mandamus or, in the alternative, prohibition ordering the circuit court to vacate its order overruling the motion to dismiss and to dismiss the action. The writ petition was denied. This Court issued a preliminary writ of mandamus. County now seeks to make the preliminary writ permanent.

---

[2] Tyler Technologies Inc. is also named as a defendant in the underlying suit; however, it is not a party to the instant matter.

[3] Unless otherwise noted, all statutory references are to RSMo 2016.

[4] To the extent Taxpayers argued before the circuit court that they need not exhaust available remedies because County failed to conduct physical inspections, Taxpayers do not raise this argument before this Court. Therefore, it is abandoned.

[5] Taxpayers filed an amended petition on July 31, 2023. All counts against County claim entitlement to relief based on allegations that County did not provide timely notice and did not conduct physical inspections of properties that increased by more than 15 percent.

**Standard of Review**

This Court has the authority to issue and determine original remedial writs. Mo. Const. art. V, sec. 4.1.[6] "Mandamus is a discretionary writ that is appropriate where a court has exceeded its jurisdiction or authority and where there is no remedy through appeal." *State ex rel. Vacation Mgmt. Sols., LLC v. Moriarty*, 610 S.W.3d 700, 701 (Mo. banc 2020) (internal quotations omitted). "To be entitled to mandamus, a relator must allege and prove … a clear, unequivocal, specific right to a thing claimed." *Id.* at 701-02 (alteration in original) (internal quotations omitted).

**Analysis**

County argues dismissal is required because Taxpayers failed to exhaust available administrative remedies before filing suit.[7] The doctrine of exhaustion of administrative remedies requires an aggrieved party to seek available administrative remedies before courts will act. *Sperry Corp. v. Wiles*, 695 S.W.2d 471, 472 (Mo. banc 1985). "This doctrine is well established, is a cardinal principle of practically universal application, and must be borne in mind by the courts in construing a statute providing for review of administrative action." *Id.* (internal quotations omitted).

The administrative remedies County claims Taxpayers were required to exhaust are set forth in chapters 137 and 138 and are part of what this Court has called "a

---

[6] This Court expedited the briefing schedule because, as explained below, Taxpayers have until December 31, 2023, to file an appeal with the State Tax Commission, if they so choose.
[7] County also argues dismissal is required because Taxpayers lack standing. Because Taxpayers failed to exhaust administrative remedies before filing suit, the action must be dismissed, and this Court need not address whether Taxpayers had standing to bring their claims. *See Westside Neighborhood Ass'n v. Beatty*, 643 S.W.3d 539, 545 n.10 (Mo. App. 2021).

complex scheme of property taxation." *Bartlett v. Ross*, 891 S.W.2d 114, 116 (Mo. banc 1995). Under such scheme, complaints about property assessments are initially brought before a county board of equalization ("Board"), which shall "determine all appeals from the valuation of property made by the assessor …." Section 138.060.1. Any appeal from a Board decision concerning the correct valuation shall be brought before the state tax commission ("Commission").[8] Section 138.430.1. The property owner, after having exhausted all administrative remedies, may seek judicial review in the circuit court. Section 536.100.

Taxpayers contend, because County failed to send them timely notice of the increases, they need not have exhausted available administrative remedies. Sections 137.180 and 137.355 provide that, when an assessor increases the valuation of any real property, the assessor is required to notify the owner on or before June 15.[9] A property owner may appeal a property assessment to the Board on or before the second Monday in

---

[8] Section 138.430.1 authorizes property owners to appeal to the Commission "concerning **all** questions and disputes involving the assessment against such property, the correct valuation to be placed on such property, the method or formula used in determining the valuation of such property, or the assignment of a discriminatory assessment to such property." (Emphasis added).

[9] Section 137.180.1 provides:

> Whenever any assessor shall increase the valuation of any real property he shall forthwith notify the record owner of such increase, either in person, or by mail directed to the last known address; every such increase in assessed valuation made by the assessor shall be subject to review by the county board of equalization whereat the landowner shall be entitled to be heard, and the notice to the landowner shall so state.

Section 137.355.2 provides, in relevant part: "[W]henever any assessor shall increase the valuation of any real property, he or she shall forthwith notify the record owner on or before June fifteenth of the previous assessed value and such increase either in person, or by mail directed to the last known address …."

July.[10]  Section 137.275.  The aggrieved property owner may appeal the Board decision to the Commission on or before September 30 of the year of assessment or within 30 days of the Board decision, whichever is later.  Section 138.430; section 138.110.  Alternatively, 12 C.S.R. 30-3.010(1)(B)1(a) authorizes a direct appeal to the Commission if an assessor fails to notify the taxpayer of the increased assessment "prior to thirty (30) days before" the Board appeal deadline.[11]  Finally, the property owner may, having exhausted all administrative remedies, seek judicial review in the circuit court.  Section 536.100.

Taxpayers assert because they did not receive timely notice, they were not required to exhaust administrative remedies before seeking judicial review.[12]  They rely on *John Calvin Manor, Inc. v. Aylward*, 517 S.W.2d 59 (Mo. 1974).  There, the taxpayer did not receive notice of the increased assessment until after the time to appeal to the Board had run.  *Id.* at 61-62.  This Court held "Where, as here, the failure to give notice

---

[10] The second Monday in July 2023 was July 10, 2023.

[11] 12 C.S.R. 30-3.010(1)(B)1(a) provides in relevant part:

> In any county or the City of St. Louis, the owner may appeal directly to the State Tax Commission (a) where the assessor fails to notify the current owner of the property of an initial assessment or an increase in assessment from the previous year, prior to thirty (30) days before the deadline for filing an appeal to the board of equalization …. Appeals under this paragraph shall be filed within thirty (30) days after a county official mailed a tax statement or otherwise first communicated the assessment or the amount of taxes to the owner or on or before December 31 of the tax year in question, whichever is later. Proof of late notice, the date of purchase, and/or notice sent to the prior owner shall be attached to, or set forth in, the complaint.

The statutory authority for this regulation is set forth in section 138.430.

[12] Taxpayers also argue they need not have exhausted administrative remedies because Counts III and IV seek actual damages, for which they argue there is no administrative remedy.  But Taxpayers fail to provide any authority supporting their position.

of the increased assessment prevents the taxpayer from pursuing his administrative remedies, the increased assessment made by the assessor is void and, consequently, so is the tax computed thereon[.]" *Id.* at 65.

*John Calvin*, however, is distinguishable from the instant case. Taxpayers assert they did not receive notice of increased assessments by June 15, and they filed suit challenging the increased assessments on June 20. The time to appeal to the Board did not expire until the second Monday in July—July 10, 2023. Section 137.275. Unlike in *John Calvin*, in which failure to give notice of the increased assessment prevented the taxpayer from pursuing his administrative remedies, here, Taxpayers were not prevented from pursuing administrative remedies. *Id.* at 62. Instead, when Taxpayers filed suit, they had 20 days to appeal to the Board.[13]

Alternatively, Taxpayers could have appealed the increased assessments directly to the Commission, as they did not receive notice prior to 30 days before the deadline to appeal to the Board. 12 C.S.R. 30-3.010(1)(B)1(a). In fact, Taxpayers have until December 31, 2023, to file an appeal with the Commission. *Id.*

---

[13] Taxpayers also rely on *McGraw-Edison Co. v. Curry*, 485 S.W.2d 175 (Mo. App. 1972), which is similarly distinguishable. There,

> Plaintiff was given no notice and therefore afforded no opportunity to either contest the void revaluation order before the Board or ask for administrative review before the State Tax Commission. In fact, it was in complete ignorance that its valuation (stipulated here to be accurate) and the resulting tax had been raised over 300% until the tax statement was received in December, 1967.

*Id.* at 180. Here, it was not the case that Taxpayers were afforded *no* opportunity to contest the assessment at the Board or before the Commission. Taxpayers additionally cite *Ingles v. Noel*, 804 S.W.2d 808 (Mo. App. 1991), and *United Missouri Bank of Kansas City v. March*, 650 S.W.2d 678 (Mo. App. 1983). Once again, in both cases, unlike here, the taxpayer was prevented from pursuing any administrative remedies whatsoever. *Ingles*, 804 S.W.2d at 810; *March*, 650 S.W.2d at 679, 681.

In sum, County's failure to provide timely notice did not prevent Taxpayers from pursuing administrative remedies as in *John Calvin*. Rather, at the time Taxpayers filed suit, they could have exercised their appellate rights to the Board or Commission, but they chose not to and, instead, filed suit. Because Taxpayers failed to exhaust available administrative remedies before filing suit, the action must be dismissed.

## Conclusion

Because Taxpayers failed to exhaust all available administrative remedies before filing suit, the underlying action must be dismissed. This Court makes permanent its preliminary writ of mandamus.[14]

_____
Mary R. Russell, Chief Justice

Fischer, Ransom, Wilson, Broniec and Gooch, JJ., and Wright, Sp.J., concur.
Powell, J., not participating.

---

[14] No Rule 84.17 motions for rehearing shall be filed in this matter.