James A. BUCK, Sr., Appellant,

v.

Ronald A. LEGGETT, Collector
of Revenue, City of St.
Louis, Respondent.

No. 73363.

Supreme Court of Missouri,
En Banc.

July 23, 1991.

William A. Shirley, Chesterfield, for appellant.

Anthony J. Sestric, St. Louis, for respondent.

ALMON H. MAUS, Special Judge.

In 1988, the assessed value of Parcel No. 3682–00–02900 of real property in the City of St. Louis was $11,000. In 1989, the assessed value of that parcel was raised to $50,700. In 1990, the assessed value was $19,600. Plaintiff James A. Buck, Sr., paid the 1989 real estate taxes of $3,892.75 based upon the assessed value of $50,700. He claims a refund under § 139.031.5 of that portion of the 1989 taxes resulting from a valuation in excess of $19,600. He asserts that portion of those taxes was "mistakenly or erroneously paid" within the meaning of § 139.031.5. The trial court rendered summary judgment against the plaintiff in his action against the Collector of Revenue of the City of St. Louis. The plaintiff appealed to this Court.

The plaintiff states his appeal presents the following questions.

"1) whether the laws of Missouri require a taxpayer to appeal an incorrect assessment, and to protest the taxes paid pursuant to a bill based on said incorrect assessment, to preserve the right of the taxpayer to recover the overpayment;

2) whether, in the instant situation, an assessment in the subsequent year may evidence that the assessor incorrectly assessed the property in the previous year; and,

3) whether, in the instant situation, a refund should issue."

He contends that the answers to those questions require the construction of revenue laws of this state in this "case of first impression". Therefore, the plaintiff concludes, exclusive jurisdiction of his appeal is in this Court by reason of Mo. Const., art. V, § 3.

This case does involve the revenue laws of this state. However, as hereafter developed, the criteria for reaching the answers to those questions have been established by prior decisions of this Court. The answer to question 1) is "Yes" and the answers to questions 2) and 3) are "No". Those answers are found in cases such as *B & D Inv. Co., Inc. v. Schneider*, 646 S.W.2d 759 (Mo. banc 1983), and *State ex rel. Council Apartments, Inc. v. Leachman*, 603 S.W.2d 930 (Mo.1980).

"Given the establishment of such criteria, this appeal involves questions of application of a revenue law already construed by this Court and, therefore, jurisdiction of this appeal lies in the Eastern District of the Court of Appeals." *Affiliated Med. Transport v. Tax Com'n*, 741 S.W.2d 25, 27 (Mo. banc 1987).

"The conclusion regarding appellants' attempt to raise a constitutional issue would provide an adequate basis for transfer of this appeal to the Court of Appeals. However, in the interest of judicial economy, the appeal will be retained here. Rule 83.-06. *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 196 (Mo. banc 1972)." *Atkins v. Department of Bldg. Reg., Etc.*, 596 S.W.2d 426, 434 (Mo.1980). Much of what is written is redundant and is perhaps unnecessary except to rephrase the rationale of the cases establishing the controlling criteria.

■ The evidentiary material supporting and opposing the collector's motion for a summary judgment established there was "no genuine issue" concerning the following material facts. Rule 74.04. The plaintiff owns the real property located at 4223 Dr. Martin Luther King Drive and designated Parcel No. 3682–00–02900 in the City of St. Louis. For 1988, the assessed value of that real property was $11,000. As a part of a general reassessment the assessed value for 1989 was raised to $50,-700. A "Notice of Change in Assessed Value" for 1989 was mailed to the plaintiff at 5157 Palm St., St. Louis, Missouri 63115. The real property taxes for 1989, calculated upon the basis of an assessed value of $50,700, were $3,892.75. Those taxes were paid without protest by Community Federal from an escrow fund that it held in connection with a loan secured by a deed of trust on that real property. Community Federal subsequently provided to the plaintiff a Mortgage Interest Statement for calendar year 1989. This Mortgage Interest Statement was addressed to plaintiff at 5157 Palm 2E [sic], St. Louis, MO 63115–1532 and advised the plaintiff that Community Federal had paid real estate taxes for 1989 in the amount of $3,892.75. For 1990, the assessed value of the real property was $19,600. On August 20, 1990, the plaintiff made application to the Collector of Revenue of the City of St. Louis under § 139.-031.5 for the refund of 1989 real estate taxes paid to the extent of $2,387.86. That figure was calculated upon the difference between the 1989 assessed value and the 1990 assessed value using the 1989 tax rate. In his application, the plaintiff asserted that a portion of 1989 real estate taxes in the amount of $2,387.86 had been "mistakenly or erroneously paid" within the meaning of § 139.031.5. The Collector of Revenue denied the application for a refund. By his petition in this action, the plaintiff seeks to recover that refund. As stated, the motion of the Collector of Revenue for a summary judgment in his favor was sustained.

To determine the scope of § 139.031.5, that section must be construed in context as a part of the statutory provisions for the assessment, levy and payment of taxes. *Xerox Corp. v. Travers*, 529 S.W.2d 418 (Mo. banc 1975). Moreover,

"[i]n construing a statute it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are

found in different chapters and were enacted at different times." *Citizens Elec. v. Dir. of Dept. of Rev.*, 766 S.W.2d 450, 452 (Mo. banc 1989).

From an overview of Chapters 137, 138 and 139, it is apparent that in regard to the facet of taxation under consideration, the legislature intends to provide a method whereby a taxpayer, who pursues his administrative remedy, may, under protest, pay taxes levied upon the basis of a disputed assessment and preserve his objection and thereby advise the taxing authority, with reasonable assurance, of the amount of its disposable revenue. See *B & D Inv. Co., Inc. v. Schneider*, supra.

■ It is clear that if a taxpayer with notice of an increase in assessed value of his property fails to exhaust his administrative remedy to question that increase, he cannot do so in any other proceeding. *C & D Inv. Co. v. Bestor*, 624 S.W.2d 835 (Mo. banc 1981). He cannot do so in an action to enjoin the collection of taxes based upon that increase. *Cupples–Hesse Corporation v. Bannister*, 322 S.W.2d 817 (Mo. 1959). Nor can he do so by paying his taxes under protest and suing to recover them under § 139.031.2. *Westglen Village Associates v. Leachman*, 654 S.W.2d 897 (Mo. banc 1983). This is true even if he asserts the increased assessment was un-. constitutionally discriminatory. *Westglen Village Associates v. Leachman*, supra.

"Similarly, in a suit against the state for recovery of taxes, statutorily provided administrative procedures must be utilized exclusively, and must be followed to exhaustion even where constitutional claims are raised. *Ellsworth Freight Lines, Inc. v. Missouri Highway Reciprocity Commission*, 568 S.W.2d 521 (Mo. banc 1978). See, *B & D Investment Company, Inc. v. Schneider*, 646 S.W.2d 759, 762 (Mo. banc 1983) (where administrative remedies are adequate that remedy is ordinarily exclusive)...." *Westglen Village Associates v. Leachman*, 654 S.W.2d at 900.

By the same token, "[e]ven though a taxpayer has appealed an assessment to the State Tax Commission, to preserve the asserted error, the taxes, *if paid*, must be paid in compliance with § 139.031(1). *Adcor Realty v. State Tax Com'n.*, 627 S.W.2d 604 (Mo. banc 1982); *Xerox Corporation v. Travers*, supra." *B & D Inv. Co., Inc. v. Schneider*, 646 S.W.2d at 763. (Emphasis added.)

"When a challenge is made to a tax assessment, the procedure as outlined in *Xerox Corporation v. Travers*, 529 S.W.2d 418, 422 (Mo. banc 1975), should still be followed. That procedure involves 1) paying taxes under protest and filing a statement with the collector, 2) within 90 days filing suit in circuit court, and, 3) if appeal is made to the Missouri State Tax Commission the taxpayer is to notify the collector and the circuit court to have that action stayed until the proceedings are finalized." *Westglen Village Associates v. Leachman*, 654 S.W.2d at 900. The plaintiff does not question the above principles. However, he asserts they are not applicable to his claim under § 139.031.5 because he had no notice of the increased assessment.

The statutory plan of taxation is a part of government. The officials administering that plan are obligated to follow the statutes. Yet, at least to some extent, landowners are held to know that all real property is assessed and taxed annually and bear some obligation to see that taxes on their property are paid each year. See *Sutter v. Scudder*, 110 Mont. 390, 103 P.2d 303 (1940), and *Rains v. Teague*, 377 So.2d 924 (Miss.1979). This obligation is expressed by statute.

"Each tract of land or lot shall be chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed. The assessment of land or lots in numerical order, or by plats and a land list in alphabetical order, as provided in this chapter, *shall be deemed and taken in all courts and places to impart notice to the owner or owners thereof,* whoever or whatever they may be, that it is assessed and liable to be sold for taxes, interest and costs chargeable thereon; and no error or omission in regard to the name of any person, with reference to any tract of land or lot, shall in any wise impair the

validity of the assessment thereof for taxes." § 137.170. (Emphasis added.)

This statute has been applied to hold that assessments of a described tract to a named individual not only included the surface but also all mineral interests held by others, none of whom were given notice of such assessments. *Dorman v. Minnich,* 336 S.W.2d 500 (Mo. banc 1960). This statute has not been further construed. The Collector of Revenue does not rely upon it. It need not be further considered except as an example of the fact that the doctrine of due process and notice in the field of taxation is, to some degree, unique.

"It must be borne in mind that the principles involved in due process of law as applied to proceedings for the collection of public revenue by taxation are more summary in character and necessarily less formal than those applicable to cases of a judicial character." 72 Am. Jur.2d, State & Local Taxation, § 782, at p. 100.

The plaintiff's argument is premised upon a statutory requirement of notice of an increase in assessed value.

"Whenever any assessor shall increase the valuation of any real property he shall forthwith *notify the record owner of such increase, either in person, or by mail directed to the last known address;* every such increase in assessed valuation made by the assessor shall be subject to review by the county board of equalization whereat the landowner shall be entitled to be heard, and the notice to the landowner shall so state." § 137.-180. (Emphasis added.)

Section 137.490 contains a similar provision. Those statutes provide for notice "by mail directed to the last known address". There is authority that, even if this provision is construed as mandatory, this requirement is satisfied when such notice has been placed in the mail, whether or not received by the taxpayer. *County Treasurer v. LaSalle–Lake Investors,* 62 Ill. Dec. 458, 106 Ill.App.3d 451, 436 N.E.2d 40

(1982); *Southern Tier Pizza Hut, Inc. v. Bailey,* 113 Misc.2d 37, 448 N.Y.S.2d 406 (1982). A similar statute expressly so provides. *Turner v. Lansing Tp.,* 108 Mich. App. 103, 310 N.W.2d 287 (1981). This proposition has been recognized in this state. *Slay Warehousing Co., Inc. v. Leggett,* 762 S.W.2d 63 (Mo.App.1988). However, the judgment of the trial court need not be sustained on that basis.

■ Where the issue is submitted to the finder of fact, notice of an increase in assessed value can be found to have been received upon the basis of a presumption of delivery of mail, even though a taxpayer denies receipt. *Hughes v. Estes,* 793 S.W.2d 206 (Mo.App.1990). See also *United Missouri Bank of Kansas City v. March,* 650 S.W.2d 678 (Mo.App.1983). However, a presumption cannot be the basis for sustaining the summary judgment denying the plaintiff's claim. The plaintiff's counter affidavit denies receipt of the notice. There is a genuine issue concerning the actual receipt of the mailed notice.

■ Nonetheless, even assuming § 137.490 requires actual receipt of a mailed notice, the fact that plaintiff did not receive that notice does not establish his right to a refund. Such notice is not declared to be a prerequisite to the power of the assessor to increase an assessment. The failure of the assessor to give the statutory notice may deny a taxpayer an opportunity to exhaust his administrative remedy to contest that increase before the Board of Equalization and the State Tax Commission. In such circumstances, a taxpayer may enjoin the collection of taxes based upon the increase. *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974); *United Missouri Bank of Kansas City v. March,* supra; *Ingels v. Noel,* 804 S.W.2d 808 (Mo.App.1991).[1] But, it does not follow that a taxpayer can, without protest, pay taxes based on the increased assessment and then seek recovery of such taxes.

---

1. Late notice of an assessor's denial of reconsideration of the exempt status of property may provide a basis for a late appeal to the Board of Equalization and the State Tax Commission. *Lake St. Louis Com. Ass'n v. Tax Com'n,* 759 S.W.2d 843 (Mo. banc 1988).

■ Ad valorem taxes on real property for each year are calculated and extended in a book that sets forth the assessed value of each tract. See § 137.215 and § 137.-225. That assessed value is shown upon tax statements that, upon payment, become tax receipts. See § 137.520 and § 139.090. Upon payment, the taxpayer is charged with knowledge of the assessed value upon the basis of which the taxes are to be paid.

The taxpayer then, charged with notice, has a choice. He can choose to enjoin the collection of such taxes. Or, he can pay those taxes. However,

> "[i]n the absence of statutory authority, *taxes voluntarily*, although erroneously *paid*, albeit under an unconstitutional statute, *cannot be refunded.*" *Com. Fed. Sav. & Loan v. Director of Rev.*, 752 S.W.2d 794, 797 (Mo. banc 1988). (Emphasis added.)

The legislature has provided a means whereby the taxpayer may establish his payment of the taxes is not voluntary, but is under duress. That means is provided by § 139.031.1. A taxpayer's failure to follow the mandate of that subsection has consistently been held to bar his claim of impropriety of any part of the taxes he has paid. That is demonstrated in *State ex rel. Council Apartments, Inc. v. Leachman,* supra, in which the taxpayer sought to assert the exempt status of its property. It is demonstrated in *Westglen Village Associates v. Leachman,* supra, in which the taxpayer sought to assert an allegedly excessive assessment was constitutionally invalid.[2] That principle bars the plaintiff from obtaining a refund of any portion of the 1989 taxes he paid, unless such a refund is expressly authorized by another statutory provision. See *Community Federal S & L v. Dir. of Revenue,* 796 S.W.2d 883 (Mo. banc 1990).

■ The plaintiff contends that § 139.-031.5 expressly authorizes his recovery.

> "All the county collectors of taxes, and the collector of taxes in any city not within a county, shall, upon written application of a taxpayer, refund any real or tangible personal property tax *mistakenly or erroneously paid* in whole or in part to the collector, or shall credit against the taxpayer's tax liability in the following taxable year any real or personal property tax *mistakenly or erroneously levied* against the taxpayer and collected in whole or in part by the collector...." § 139.031.5. (Emphasis added.)

Plaintiff focuses upon the words "mistakenly or erroneously paid". He argues that because he did not "forthwith" receive notice of the increased assessment for 1989, the taxes based upon the increase were illegally levied. Therefore, he concludes they were "erroneously paid". He also appears to contend that as the 1989 taxes, based upon the increased assessment, were paid by the mortgage company, they were "mistakenly paid".

Section 136.035, applicable to taxes "which the state is authorized to collect", provides for the refund of any overpayment or "erroneous payment" of any tax. In holding that § 136.035 is applicable to the recovery of a constitutionally invalid tax, it was said:

> "A reasonable construction of the terms 'overpayment' and 'erroneous' as used in section 136.035 includes the term 'illegal' as seen from other interpretations by this Court, the plain meaning of the language and the definition in Black's Law Dictionary." *Com. Fed. Sav. & Loan v. Director of Rev.,* 752 S.W.2d at 798.

That definition does not aid the plaintiff. Even assuming notice by mail of the increased assessment was not forthwith given or received, that deficiency does not establish any portion of the plaintiff's 1989 taxes was an illegal tax.

---

**2.** *Naegele Outdoor Advertising Co., Inc. v. Kansas City,* 509 S.W.2d 128 (Mo.1974), is not apposite. In that case the city, contrary to a constitutional provision, levied taxes upon the basis of its assessment, which was higher than that of the county. The taxpayer was not, upon payment of the city taxes, held to notice of the county assessment. The city taxes were found to have been paid under duress and the taxpayer was permitted to recover the city taxes paid resulting from the constitutionally invalid assessment.

Similar statutes in other states have been construed. "The phrase 'erroneously or illegally charged,' as used in statutes providing for a refund of taxes so exacted, is held to refer to a jurisdictional defect as distinguished from a mere error of judgment, and it is generally held that no recovery of taxes paid under protest can be had under such statutes on the theory that there has been a mistake in the valuation of the property, which resulted in an excessive assessment...." 72 Am.Jur.2d, State & Local Taxation, § 1066, p. 331. An excessive assessment does not result in an illegal tax. Annot., "Excessive assessments as within contemplation of statute providing for refunding of taxes 'erroneously or illegally charged' ", 110 A.L.R. 656 (1937).

Section 137.270 demonstrates the proper characterization of an excessive assessment. A similar statute is applicable to the Comptroller of the City of St. Louis.

"The county commission of each county may hear and determine allegations of erroneous assessment ... before the taxes are paid[.] ... *Valuations* placed on property by the assessor or the board of equalization *shall not be deemed to be erroneous assessments* under this section." § 137.270. (Emphasis added).

The plaintiff was charged with notice of the increased valuation before the taxes were paid. He had alternative remedies available and chose neither.[3] No portion of the tax paid upon the basis of an alleged overassessment was an illegal tax.

Nor can the plaintiff successfully claim the 1989 taxes were mistakenly paid within the meaning of that statute because he would have protested the increase but the mortgage company mistakenly paid the taxes. This contention has also been previously decided adversely to the plaintiff.

"The trial court judicially noticed that real estate taxes are frequently paid by third party financial institutions (HUD here), rendering it difficult for the taxpayer to file his protest at the time his taxes are paid. Assuming arguendo that such fact may be judicially noted, *see*, State ex rel. National Lead Co. v. Smith, 134 S.W.2d 1061, 1068 (Mo.App. 1939), that fact cannot justify the court's conclusion. The taxpayer would be well advised to inquire of its lending institution or agency authorized to act in its behalf of the time and plan for payment...." *State ex rel. Nat. Inv. Corp. v. Leachman,* 613 S.W.2d 634, 635 (Mo. banc 1981).

The mortgage company paid the taxes in question and, so far as the Collector of Revenue is concerned, the plaintiff is bound by the action of the mortgage company.

Nor is the plaintiff aided by *Crest Communications v. Kuehle,* 754 S.W.2d 563 (Mo. banc 1988). The taxes in that case were based upon lists of real and personal property upon which the taxpayer valued its property.[4] For the year 1985, the taxpayer was notified its valuation was increased. The taxpayer promptly protested the increase and appealed to the Board of Equalization and then to the State Tax Commission. While that appeal was pending, the taxpayer's valuation for 1986 was, without notice, similarly increased. The taxpayer paid the 1986 taxes based upon that increase. The State Tax Commission subsequently reduced the increased valuation. In *Crest,* the taxpayer exhausted its administrative remedy and complied with § 139.031. It had properly initiated a proceeding that resulted in a determination the increased assessment was excessive. Upon the basis of these unique facts, the taxpayer's petition for a partial refund of the 1986 taxes under § 139.031.5 was found to have been improperly dismissed. *Crest* is not applicable to the facts of this case.

---

3. Taxes on property subsequently determined to be exempt, paid without protest, were not erroneously or mistakenly paid. *State ex rel. Council Apartments, Inc. v. Leachman,* 603 S.W.2d 930 (Mo.1980).

4. The section providing for the taxpayer to place a value on listed property, often disregarded in practice, has been amended to eliminate such provision. § 137.120, amended by L.1989, H.B. Nos. 181 & 633, § A.

The Collector of Revenue properly denied the plaintiff's claim for a refund. The summary judgment rendered by the trial court is affirmed.

ROBERTSON, C.J., RENDLEN, COVINGTON, HOLSTEIN and BLACKMAR, JJ., and HIGGINS, Senior Judge, concur.