**TRANSATLANTIC LIMITED,
et al, Appellants,**

v.

**David M. SALVA, Respondent.**

**No. WD 59695.**

Missouri Court of Appeals,
Western District.

April 2, 2002.

Lee Ullman, Steven Drosin Horak, Overland Park, for Appellant.

Jay William Jensen, Gladstone, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Transatlantic Ltd. and David Peterson (hereinafter "Creditors") appeal the trial court's grant of summary judgment in favor of David M. Salva (hereinafter "Salva")[1], a guarantor of certain promissory notes given to Creditors by Midwest Semi–Conductor, Inc. (Midwest).[2] As we hold that summary judgment was improvidently granted by the trial court, we reverse the judgment below.

Creditors extended loans to Midwest Semi–Conductor, Inc. (Midwest) beginning in January 1994. In March 1994, Midwest provided Creditors with six promissory notes,[3] for a total amount of $150,000. Payment on the notes was due in one year. One of the note provisions also stated that

---

1. Apparently there was an "intervenor" who claimed ownership in another note originally given by Midwest to Transatlantic. The Record on Appeal does not contain any of the pleadings filed by the intervenor. The summary judgment granted in favor of Salva also extended to the claim of the intervenor. In any event the intervenor has not appealed; thus, there appears to be no issue regarding the finality of the judgment appealed from.

2. Five of the notes were payable to Transatlantic Ltd. alone. One note was payable to "David Peterson Transatlantic Ltd." The record does not reveal whether Peterson was a party to the 1996 declaratory judgment action discussed below. Peterson was not a party to the original petition in this case., but he was added in Creditors' amended petition. That pleading merely describes Peterson as an officer of Transatlantic but does not allege that he was an obligee on any of the notes. The parties do not raise any issue as to Peterson's legal capacity as to any of the notes.

3. There were also other promissory notes issued by Midwest in January 1994, but these other notes are apparently not involved in the case at bar, although there is some indication in a document that a January note may be the basis for the intervenor's claim.

the holder would have the right to exchange the note upon maturity for Midwest common stock at one dollar per share. Salva[4] signed a guaranty agreeing to repay the notes should Midwest default, plus interest at the rate of 4.167% per month from the loan date. The guaranty also contained the following language:

> However, only in the event the undersigned is called upon by the lender to make this repayment, in whole or in part, in cash, stock, or some combination thereof, it is understood and agreed that the undersigned will acquire lenders rights under the note by this repayment, in order that the undersigned can then be recompensed by the company for this expenditure of funds and/or stock in the company.

Each of the notes was designated as "Series E Convertible Subordinated Note."

Midwest defaulted, but Creditors reached a settlement agreement with Midwest and Salva in November 1994. The settlement agreement included a repayment schedule. It also contained language that stated that the agreement superceded all prior agreements between the parties. The settlement also included a provision that would terminate the holders' option to purchase stock in Midwest after the notes were satisfied. Both Midwest and Salva signed the settlement agreement as *debtors* (the settlement agreement did not characterize Salva as a guarantor).

In June 1995, Creditors filed suit against Salva, seeking to exercise their rights upon Midwest's default. Midwest[5] brought a separate action the next day seeking a declaratory judgment regarding the amount of money still owed to Creditors. Salva was *not* a party to the declaratory judgment action. Creditors dismissed their action against Salva sometime after Midwest filed a motion to consolidate that action with the declaratory judgment case. Ultimately, a stipulated judgment was entered in the declaratory judgment case on November 4, 1996. This judgment determined the principal amounts remaining due on the promissory notes as $144,663.66, with accrued interest in the amount of $127,606.54, and granted Creditors judgment against Midwest in those amounts plus interest at the contract rate of 4.167% per month.

Midwest apparently defaulted again, leading to the Creditors' filing of the present action against Salva on August 14, 2000, seeking recovery under the guaranty. Creditors pled the existence of the stipulated declaratory judgment against Midwest, and requested judgment against Salva in the amounts determined within that action. Creditors later filed an amended petition adding an alternative claim seeking recovery against Salva under the 1994 settlement agreement. In his answer to the petition Salva alleged in part that his obligation as a guarantor was discharged by "material alterations under the terms of the underlying notes" in two respects: (1) issuance of stock of Midwest to Creditors (apparently as part of the 1996 stipulated judgment), and (2) settlement agreements between the Creditors and Midwest which extended and modified the repayment terms of the notes.

Creditors first filed a motion for summary judgment against Salva. The motion

---

4. Salva also signed the promissory notes on behalf of Midwest. Creditors characterize Salva as the "owner" of Midwest, but the precise nature of his interest and relationship in Midwest is not clear from the parties' briefs or the legal file.

5. The record does not reveal if Salva was still a principal or otherwise involved with Midwest at that time.

contained a statement of facts and also attached the notes, guarantees, declaratory judgment from the 1996 action, the 1994 settlement agreement, Salva's answers to interrogatories, and an affidavit from Peterson. Salva filed a "Defendant's Motion for Summary Judgment and Suggestions in Opposition to Plaintiff's Motion for Summary Judgment." Salva's pleading contained no specific response to Creditors' statement of undisputed facts. Neither in opposition to Creditors' motion nor in support of its own did Salva set forth any additional facts or supporting documentation in separately numbered paragraphs as required by Rule 74.04. Creditors responded to Salva's motion claiming that it failed to comply with Rule 74.04(c) by either specifically responding in separately numbered paragraphs to Creditors' motion or setting forth in separately numbered paragraphs the undisputed facts which Salva claimed entitled him to judgment. Creditors claimed more than a technical violation of Rule 74 alleging that they were unable to effectively respond to Salva's motion. Ultimately the trial court granted Salva's motion for summary judgment and denied the motion filed by Creditors.[6] The parties on appeal argue whether one of the grounds was that the terms of the settlement agreement between the parties, together with the Creditor's subsequent request for relief in the declaratory judgment action solely against Midwest, constituted an election of remedies by Creditors. Specifically, by seeking a judgment against Midwest alone, it is suggested that the trial court reasoned that Creditors could only proceed against Salva under the guarantee and not the later settlement agreement. We do not read the trial court's judgment as clearly expressing such reasoning. In any event, summary judgment

for Salva on that theory suffers the same procedural deficiencies discussed below.

The trial court further held that Salva had been discharged from his obligations as guarantor. It held that the stipulated judgment between Midwest and Creditors materially changed the liabilities under the promissory notes. The trial court focused upon the stipulated judgment's transfer of stock interests in Midwest to Creditors (and apparently some third parties). The trial court found that the stock transfers impaired Salva's rights under the guaranty to acquire the Creditors' rights against Midwest under the notes.

As stated at the outset, Creditors now appeal from the trial court's grant of summary judgment in favor of Salva. They present four points on appeal. First, Creditors contend that Salva's motion is fatally deficient under Rule 74.04(c)(1), by failing to set forth separately numbered paragraphs containing undisputed facts supported by testimony, affidavit, or other evidence. Second, Creditors argue that the trial court erred in denying Creditors' cross-motion for summary judgment. Third, Creditors argue that the trial court erred in finding that the settlement agreement between Midwest and Creditors extinguished Salva's liability under his guaranty. Fourth, Creditors claim that the trial court erred in holding that the settlement agreement and subsequent stipulated judgment between Midwest and Creditors constituted an election of remedies that barred Creditors from seeking recovery from Salva under his guaranty.

## Standard of Review

This court's review of a grant of summary judgment is *de novo*. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply*, 854 S.W.2d 371, 376 (Mo. banc

---

6. The trial court also denied a motion for summary judgment filed by the intervenor mentioned previously. That motion is not part of the record on appeal.

1993). Applying that standard, we view the facts in the light most favorable to Creditors, as the non-movants. *Id.* Here, the trial court's grant of summary judgment is premised upon affirmative defenses raised by Salva. To affirm the judgment below, therefore, we must conclude that Salva's motion sets forth undisputed facts which establish every element of one of those affirmative defenses. *See id.* at 381.

Salva disagrees, arguing that our standard of review is provided by Rule 73.01 governing trials without a jury. Salva alleges that the case was properly decided by the trial court solely on "undisputed documents and the orders of another Court of equal jurisdiction" and is only reviewable for erroneous declaration or application of the law. Salva's argument not only totally fails to recognize the different standard of review for summary judgment but misstates the standard of review for court tried cases on the merits. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A case may be tried under Rule 73.01 upon stipulated documents and or facts. The disposition by the trial court herein was not such a trial. Even if the parties in cross motions for summary judgment would agree that all facts were undisputed, it would not convert the proceeding to a non-jury trial under Rule 73.01. And certainly Creditors here did not agree to such a submission. This case is governed by the standard of review for summary judgments set forth above.

### Application of Rule 74.04 to Salva's Motion

We first take up the issue of the sufficiency of Salva's motion for summary judgment, as viewed through the standards set forth in Rule 74.04(c)(1). Creditors are correct in their complaint that Salva's motion failed to set forth the material facts he relied upon in a series of numbered paragraphs supported by testimony or other evidence. Salva does not directly contest this contention. Instead, he responds that the trial court had all the relevant facts before it and could properly grant his motion, given that it established his right to judgment as a matter of law.

Failure to meet the technical requirements of Rule 74.04 may be a proper basis for denial of a motion for summary judgment, and such defects have, on other occasions, led to the reversal of summary judgments. *See, e.g., Mathes by and through Mathes v. Nolan*, 904 S.W.2d 353, 354–55 (Mo.App.1995). Not all defects, however, necessitate reversal. The central question is whether the motion for summary judgment contains sufficient discussion of the relevant facts to apprise the non-movant and the trial court of the specific grounds upon which the movant claims to be entitled to judgment as a matter of law. *See Rodgers v. Threlkeld*, 22 S.W.3d 706, 711 (Mo.App.1999). If the motion and the referenced facts are sufficiently clear, technical defects in the motion itself need not defeat the movant's claim for summary judgment. *Id.*

Upon review of the record before us, it is clear that Salva's motion for summary judgment fails to meet the formal requirements of Rule 74.04(c)(1). Nor does Salva's motion adequately set forth the undisputed facts which are the foundation for his claim to summary judgment. He does not provide any references to deposition testimony, discovery responses, affidavits, or other materials within his motion. His motion generally sets forth some allegations of fact but contains no citation or reference to any supporting material. Salva might make an argument, but does not, that we should look to the factual allegations of Creditors' motion for summary judgment and the documents at-

tached thereto, deeming them admitted because Salva did not deny them. We have endeavored to review Creditors' motion and its statement of undisputed facts and accompanying documents and consider those facts and documents as undisputed and whether they show Salva as entitled to judgment as a matter of law. That effort is futile for several reasons.

Salva did not point to particular facts or portions of documents in his motion. As the trial court attempted to do, we have tried to glean the important facts from those materials. We have even looked to Salva's respondent's brief on appeal to attempt to discern what facts he claims demonstrate his right to judgment on the theory that his obligation as a guarantor was materially altered and, therefore, discharged. It seems that Salva believes that the 1996 judgment approving a transfer of stock from Midwest to Creditors is the predicate fact of material alteration. We do not believe that such a conclusion can be reached as a matter of law on the record that is before us. More to the point, we do not believe that such a conclusion can be reached on the record before the trial court.

The trial court's judgment itself demonstrates that the matters contained in Creditors' summary judgment did not cure Salva's total disregard for the requirements of Rule 74.04. The trial court's opinion reflects that, on its own, it went to the court file involving the earlier declaratory judgment action and read and considered pleadings in that matter. Not only are those materials not part of the record before us, they were not part of any summary judgment record below. All we see and all that was properly before the trial court was the judgment and amended judgment in that action. From the record provided, we cannot determine what the purpose of the stock transfer was, any

value attributed to it, or whether it materially altered Salva's guaranty obligation. As such, the factual basis for the trial court's grant of summary judgment is not clear and cannot be upheld on appeal.

Our courts have, on occasion, treated somewhat liberally the requirements of Rule 74.04 where the motion contains sufficient allegations to apprise the opposing party and the court of the specific grounds and factual and legal basis of summary judgment. *Rodgers,* 22 S.W.3d at 711. Salva's motion here consisted of a one-sentence request for summary judgment. The memorandum that accompanied was a combination, undifferentiated, of argument for his own motion and opposition to Creditors' motion. The argument therein that can be clearly identified as supporting Salva's motion contains broad and abbreviated conclusions and hypothetical questions. This is not a case for a relaxed application of Rule 74.04. We have been forced, as were Creditors and the trial court, to search the record for facts and legal arguments that entitle Salva to summary judgment. That is not the process and burden contemplated by Rule 74.04. Salva's motion for summary judgment was fatally defective under Rule 74.04(c)(1). As such, the trial court erred in granting Salva's motion. As this conclusion is dispositive, we do not reach the remaining issues raised by Creditors in their appeal from the trial court's entry of summary judgment in favor of Salva.

██ Creditors also contend that the trial court erred in denying their motion for summary judgment. Generally, the denial of a summary judgment is not appealable. *Sanders v. Ins. Co. of N. Am.,* 42 S.W.3d 1, 8 (Mo.App.2000). In certain circumstances, the denial of a party's motion for summary judgment can be reviewed when its merits are completely intertwined with a grant of sum-

mary judgment in favor of an opposing party. *See Stone v. Crown Diversified Indus. Corp.*, 9 S.W.3d 659, 664 (Mo.App. 1999); *Kaufman v. Bormaster*, 599 S.W.2d 35, 38 (Mo.App.1980). We may direct in this posture, if proper, the judgment that the court should have entered. *See* Rule 84.14; *Redpath v. Mo. Highway & Transp. Comm'n*, 14 S.W.3d 34, 41 (Mo.App.1999). Creditors' motion did not clearly and as a matter of law rebut each and every affirmative defense asserted by Salva. The trial court did not err in denying their motion.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

ROBERT G. ULRICH, Judge, and LISA WHITE HARDWICK, Judge, concur.