**The QUAKER OATS COMPANY, Respondent,**

v.

**Gary STANTON, Assessor for Buchanan County, and Pat Rethemeyer, Collector for Buchanan County, Appellants.**

**No. WD 60920.**

Missouri Court of Appeals, Western District.

Jan. 31, 2003.

Pamela L. Cone, St. Joseph, MO, for appellants.

Brian T. Howes, Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Gary Stanton, Assessor for Buchanan County,[1] and Pat Rethemeyer,[2] Collector for Buchanan County, appeal from a judgment ordering the Assessor to correct the assessment roll to reflect a $2,666,667 reduction in the assessment of Quaker Oats' tangible personal property, and ordering the Collector to refund $126,400 in excess taxes that Quaker Oats paid. In 1999, Quaker Oats, because of a clerical error, overpaid $126,400 in personal property taxes. Pursuant to section 139.031.5, RSMo 2000,[3] it filed a claim against the Assessor and Collector to correct the assessment roll and for a refund of the taxes it overpaid. The trial court entered a judgment in Quaker Oats' favor. On appeal, the Assessor and Collector allege that the trial court erred because (1) section 139.031.5 does not allow claims against assessors; (2) Quaker Oats did not exhaust its administrative remedies; and (3) the Collector does not possess or control the funds to make the refund. Because Quaker Oats was challenging an incorrect valuation of its property, it was required to exhaust its administrative remedies and pay its taxes under protest, which it did not do. As a result, Quaker Oats' claim for a refund of the excess taxes paid is barred and the judgment of the trial court is reversed.

**Factual and Procedural Background**

The parties filed a joint stipulation of undisputed facts and those facts are that Quaker Oats, a corporation organized under the laws of New Jersey, operated a manufacturing facility in St. Joseph during 1999. Because it had a place of business in Missouri, Quaker Oats was subject to Missouri tangible personal property taxes for the personal property that was located in this state. To facilitate the computation of taxes owed, Quaker Oats was required by Missouri law to file a Business Personal Property Tax Declaration for Buchanan County. The declaration that Quaker Oats filed in 1999 overstated the original cost of Quaker Oats' personal property by $10,000,000. The declaration stated that the original cost of its personal property acquired in 1997 was $18,452,482, when the actual cost of the property was $8,452,482. This overstatement was the result of a clerical error made by Quaker Oats when hand-written notations were typed onto the declaration form.

A staff person in the Buchanan County assessor's office utilized the figures on Quaker Oats' declaration form to compute the assessed value of Quaker Oats' personal property in Buchanan County. A copy of the 1999 Business Personal Property Tax Declaration with figures showing the assessed value of the property was mailed to Quaker Oats on April 23, 1999. Quaker Oats' overstatement of the cost of its personal property caused it to be assessed $126,400 more than it actually owed for 1999 personal property taxes. Quaker Oats did not notice the error when it received the copy of the 1999 Business Personal Property Tax Declaration sent by the assessor's office. As a result, it did not file an appeal of the 1999 business personal property tax assessment with the Buchanan County Board of Equalization.

Later in the year, the Collector mailed a personal property tax bill to Quaker Oats. Included with the tax bill was a notice.

---

1. Scot VanMeter is now the Assessor for Buchanan County.

2. Peggy Campbell is now the Collector for Buchanan County.

3. All statutory references are to Revised Statutes of Missouri 2000, unless otherwise indicated.

The notice read, in relevant part: "Notice to Taxpayer, Missouri Law States: 1. It is the Obligation of the taxpayer to see that his property is properly described and assessed on the tax books. PLEASE CHECK STATEMENT BEFORE PAYMENT." Quaker Oats paid the amount of personal property tax billed, without protest, on December 27, 1999.

Quaker Oats subsequently discovered its error and, within one year of payment, made a written application for refund of the taxes, pursuant to section 139.031.5, claiming that excess taxes were mistakenly or erroneously paid. The application for a refund was made to the Collector and also requested that the Assessor correct the assessment roll. The Collector refused to issue a refund, and the Assessor refused to correct the assessment roll. Subsequently, on December 21, 2000, Quaker Oats filed, in the Circuit Court of Buchanan County, a "Petition to Recover Property Tax Mistakenly or Erroneously Paid."

The parties filed motions for summary judgment upon the stipulated facts. In an amended judgment, dated September 5, 2001, the trial court found in favor of Quaker Oats and ordered the Assessor to correct the assessment to reflect a $2,666,667 reduction in the assessed value of Quaker Oats' tangible personal property. The trial court further ordered the Collector to refund $126,400 to Quaker Oats. This appeal followed.

### Standard of Review

Both parties argue that the standard of review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). There is case authority for this position. In *Cappo v. Allstate Life Insurance Co.*, 809 S.W.2d 131, 132–33 (Mo.App.1991), this court held that when a case is submitted to the trial court upon a stipulation of facts, a grant of summary judgment should be considered a

judgment on the merits, and the standard of review should be under *Murphy v. Carron*. See also *King v. Jones*, 971 S.W.2d 916, 919 (Mo.App.1998) (recognizing and applying this holding from *Cappo*). In contrast to the standard of review in these cases, however, the Supreme Court has applied the summary judgment standard of review to an appeal from an order granting summary judgment upon stipulated facts. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988). Under *Johnson*, then, the proper standard of review is the standard of review for a grant of summary judgment.

■ Therefore, the holdings of *Cappo* and *King* are in conflict with the Supreme Court's decision in *Johnson* and are also inconsistent with this court's more recent decisions. See *Transatlantic Ltd. v. Salva*, 71 S.W.3d 670, 674 (Mo.App.2002) (stating that "[e]ven if the parties in cross motions for summary judgment would agree that all facts were undisputed, it would not convert the proceeding to a non-jury trial under Rule 73.01," and, thus, the standard of review would not be under *Murphy v. Carron*); *A & L Holding Co. v. S. Pac. Bank*, 34 S.W.3d 415, 417 (Mo.App. 2000) (holding that the standard of review for an appeal from a grant of summary judgment based upon stipulated facts is that for any grant of summary judgment). This court is compelled to follow the most recent holding of the Supreme Court, as it did in *Transatlantic* and *A & L Holding Co.*, so the standard of review is that applicable to the grant of summary judgment. *Kansas Ass'n of Private Investigators v. Mulvihill*, 35 S.W.3d 425, 432 (Mo.App. 2000).

■ The standard of review for an appeal from a grant of summary judgment is controlled by *ITT Commercial Finance Corp. v. Mid–America Marine Supply*

*Corp.,* 854 S.W.2d 371 (Mo. banc 1993).[4] *A & L Holding Co.,* 34 S.W.3d at 417. Under *ITT,* appellate review of a grant of summary judgment is essentially de novo. *ITT,* 854 S.W.2d at 376. This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the initial judgment of the trial court is based on the record submitted and amounts to a decision on a question of law. *Id.* The moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378. Because the parties have stipulated to the facts, the only question before this court "is whether the trial court drew the proper legal conclusion from the facts." *Perry State Bank v. Farmers Alliance Mut. Ins. Co.,* 953 S.W.2d 155, 157 (Mo.App.1997).

### Exhaustion of Administrative Remedies and Payment of Taxes Under Protest Required

The Assessor and Collector's second point is dispositive, so that point alone will be addressed. In this point, the Assessor and Collector assert that the trial court erred in ordering the Assessor to correct Quaker Oats' 1999 personal property tax assessment and ordering the Collector to refund, under section 139.031.5, the excess taxes Quaker Oats paid as a result of its erroneous Business Personal Property Tax Declaration. The basis of these claims of error is that Quaker Oats is not entitled to relief under the provisions of section 139.031.5 because it failed to exhaust its administrative remedies.

The administrative remedies that the Assessor and Collector claim Quaker Oats was required to exhaust are part of what the Supreme Court has called "a complex scheme of property taxation." *Bartlett v. Ross,* 891 S.W.2d 114, 116 (Mo. banc 1995). That complex scheme was described by the Supreme Court in *Bartlett:*

> The assessor initiates the process by making a property assessment, which may be appealed (1) to the county board of equalization; then (2) to the State Tax Commission *if* the dispute involves "assessment . . ., the correct valuation . . ., the method or formula used in determining the valuation . . ., or the assignment of a discriminatory assessment;"(FN2)[5] and finally (3) to circuit court. §§ 137.335, 137.385, 138.110, 138.430.1. To receive a refund, taxpayers must exhaust applicable administrative remedies.

*Id.* (case citations omitted). While pursuing these administrative remedies, taxpayers can avoid penalties and interest, if their challenge to the tax is ultimately unsuccessful, by paying the tax under protest during the pendency of the administrative proceedings and filing with the collector "a written statement setting forth the grounds upon which [the] protest is based." Section 139.031.1. Until 1983, the taxpayer was also required to file suit against the collector within ninety days of filing a protest. *See* § 139.031.2, RSMo 1978. In 1983, the legislature revised section 139.031 to provide that any taxpayer

---

4. Although *Johnson* came before *ITT, ITT* only changed the standard of review for an appeal from a grant of summary judgment and did not change when the appellate courts should apply that standard of review. *See ITT,* 854 S.W.2d at 376–382.

5. Footnote 2 in *Bartlett,* 891 S.W.2d at 116, reads: "However, appeals may proceed directly to circuit court from the county board of equalization—bypassing the State Tax Commission—*if* the dispute involves 'the exclusion or exemption of . . . property from assessment.' § 138.430.2."

who has filed an appeal with the state tax commission is not required to file suit against the collector but must notify the collector in writing of the appeal. Section 139.031.3.

When challenges to taxes do not involve questions of valuation, equalization, or any other issue in § 138.430, no administrative appeals are required. For example, in *Bartlett*, 891 S.W.2d at 116, the Court held that "no administrative appeals were required because the taxpayers challenge only the *tax rate*. No question of valuation, equalization, nor any other issue in § 138.430 is involved." Moreover, "when a taxpayer does not question the valuation of his property, but asserts it is not subject to the tax, he need not appear before the Board of Equalization but may enjoin the enforcement of the tax." *B & D Inv. Co. v. Schneider*, 646 S.W.2d 759, 762 (Mo. banc 1983). *See also Pentecostal Church of God v. Hughlett*, 737 S.W.2d 728, 729 (Mo. banc 1987). In *Pentecostal Church of God*, the plaintiff claimed that its property was not subject to ad valorem taxes. *Id.* In holding that the plaintiff did not have to exhaust its administrative remedies, the Court stated, "There is no valuation or equalization problem, and so a large part of the administrative procedure would be redundant." *Id.* Under these circumstances, "the taxpayers need only pay under protest (§ 139.031.1) and then sue the collector in circuit court (§ 139.031.2)." *Bartlett*, 891 S.W.2d at 116.

The purpose of permitting a taxpayer to pay the tax under protest pursuant to section 139.031.1 is so the taxpayer can make it known that the taxpayer is paying involuntarily and can alert the taxing authority to the amount of the refund claimed so that the challenged tax can be segregated and held until resolution of the dispute. *See* § 139.031.2. Stated more fully:

> [T]he statutory requirement is intended not only to furnish proof that the payment was involuntarily made, but also to warn the tax collector that the tax is claimed to be illegal; and the filing of a protest has two purposes, to serve notice on the government of the dissatisfaction of the taxpayer, and to define the grounds on which the taxpayer stands. 84 C.J.S. *Taxation* § 638 (1974).

*B & D Inv. Co.*, 646 S.W.2d at 762. Otherwise, the "[t]axes for several years could be collected and disbursed by the taxing authority in reliance upon the apparent validity of such taxes. A subsequent refund of such taxes could create serious financial problems for the taxing authority." *Id.*

There are certain circumstances, however, when the provisions of section 139.031.5 provide an alternative to the administrative remedies and the requirement that taxes be paid under protest. Section 139.031.5 states:

> All the county collectors of taxes, and the collector of taxes in any city not within a county, shall, upon written application of a taxpayer, refund any real or tangible personal property tax mistakenly or erroneously paid in whole or in part to the collector, or shall credit against the taxpayer's tax liability in the following taxable year any real or personal property tax mistakenly or erroneously levied against the taxpayer and collected in whole or in part by the collector. Such application shall be filed within one year after the tax is mistakenly or erroneously paid. The governing body, or other appropriate body or official of the county or city not within a county, shall make available to the collector funds necessary to make refunds under this subsection by issuing war-

rants upon the fund to which the mistaken or erroneous payment has been credited, or otherwise.

Quaker Oats relies upon subsection 5 to argue that it was not required to exhaust its administrative remedies and pay taxes under protest because its claim fits within the plain and ordinary meaning of the statutory language of section 139.031.5, which allows a taxpayer to obtain a refund if the tax was "mistakenly or erroneously paid." Citing the general rules of construction,[6] Quaker Oats relies upon the dictionary definition of "mistakenly" and "erroneously" to argue that its clerical error fits within the dictionary definitions of those terms and, therefore, is governed by the provisions of section 139.031.5. Quaker Oats' argument that the statute is unambiguous and the dictionary definitions are controlling is not persuasive, however, since its position is contrary to the Supreme Court's rulings establishing the scope of section 139.031. In considering another taxpayer's claim that he was entitled to relief under section 139.031.5 when he had not pursued administrative remedies, the Supreme Court found that the terms of section 139.031.5 cannot be interpreted without reading those terms *in para materia* with the provisions of the tax statutes in Chapters 137, 138, and 139. *Buck v. Leggett*, 813 S.W.2d 872, 874–75 (Mo. banc 1991). Specifically, in *Buck*, the Supreme Court held:

> To determine the scope of § 139.031.5, that section must be construed in context as a part of the statutory provisions for the assessment, levy and payment of taxes. *Xerox Corp. v. Travers*, 529 S.W.2d 418 (Mo. banc 1975). Moreover,
>
> > "[i]n construing a statute it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times." *Citizens Elec. v. Dir. of Dept. of Rev.*, 766 S.W.2d 450, 452 (Mo. banc 1989).
>
> From an overview of Chapters 137, 138 and 139, it is apparent that in regard to the facet of taxation under consideration, the legislature intends to provide a method whereby a taxpayer, who pursues his administrative remedy, may, under protest, pay taxes levied upon the basis of a disputed assessment and preserve his objection and thereby advise the taxing authority, with reasonable assurance, of the amount of its disposable revenue. *See B & D Inv. Co., Inc. v. Schneider*, [646 S.W.2d 759 (Mo. banc 1983) ].

*Id.*

In light of the context of subsection 5, within the statutory scheme of Chapters 137, 138, and 139, which includes the other subsections of section 139.031, the Supreme Court construed the scope of the language "mistakenly and erroneously

---

6. Quaker Oats cites *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988), where the Supreme Court stated:

> The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. And, where a statute's language is clear and unambiguous, there is no room for construction. In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence. Moreover, the plain and unambiguous language of a statute cannot be made ambiguous by administrative interpretation and thereby given a meaning which is different from that expressed in a statute's clear and unambiguous language.
>
> (Internal citations omitted.)

paid" more narrowly than the dictionary definitions advocated by Quaker Oats. The Supreme Court first considered whether forms of relief other than administrative remedies are available if the challenge to the tax is a question of valuation. In finding that they are not, the Supreme Court stated:

> It is clear that if a taxpayer with notice of an increase in assessed value of his property fails to exhaust his administrative remedy to question that increase, he cannot do so in any other proceeding. *C & D Inv. Co. v. Bestor*, 624 S.W.2d 835 (Mo. banc 1981). He cannot do so in an action to enjoin the collection of taxes based upon that increase. *Cupples–Hesse Corporation v. Bannister*, 322 S.W.2d 817 (Mo.1959). Nor can he do so by paying his taxes under protest and suing to recover them under § 139.031.2. *Westglen Village Associates v. Leachman*, 654 S.W.2d 897 (Mo. banc 1983). This is true even if he asserts the increased assessment was unconstitutionally discriminatory. *Westglen Village Associates v. Leachman, supra.*
>
> > "Similarly, in a suit against the state for recovery of taxes, statutorily provided administrative procedures must be utilized exclusively, and must be followed to exhaustion even where constitutional claims are raised. *Ellsworth Freight Lines, Inc. v. Missouri Highway Reciprocity Commission*, 568 S.W.2d 521 (Mo. banc 1978). *See*, *B & D Investment Company, Inc. v. Schneider*, 646 S.W.2d 759, 762 (Mo. banc 1983) (where administrative remedies are adequate that remedy is ordinarily exclusive)...." *Westglen Village Associates v. Leachman*, 654 S.W.2d at 900.

*Buck*, 813 S.W.2d at 875.

The Supreme Court went on to consider whether taxes paid based upon an assessment that was reduced in a subsequent year were "mistakenly or erroneously" paid within the meaning of section 139.031.5. *Id.* at 877. The facts of *Buck* are that real property was assessed at $11,000 in 1988. *Id.* at 873. In 1989, the assessed value of the property was raised to $50,700 but was lowered in 1990 to $19,600. The taxpayer's mortgage company paid the taxes for 1989 based upon the $50,700 assessed value. After the assessed valued was lowered in 1990, the taxpayer filed suit, asserting that he was entitled to a refund under section 139.031.5 because the taxes he paid in excess of the assessed value for 1990 were mistakenly or erroneously paid. While finding that payment of illegal taxes fits within the definition of "erroneously" paid, the Court, nevertheless, held that "[t]he plaintiff was charged with notice of the increased valuation before the taxes were paid. He had alternative remedies available and chose neither. No portion of the tax paid upon the basis of an alleged overassessment was an illegal tax." *Id.* at 878 (footnote omitted).

The Court rejected the taxpayer's claim that, because the mortgage company paid the taxes, the taxes were paid "mistakenly." In so holding, the Court stated that " '[t]he taxpayer would be well advised to inquire of its lending institution or agency authorized to act in its behalf of the time and plan for payment....' *State ex rel. Nat. Inv. Corp. v. Leachman*, 613 S.W.2d 634, 635 (Mo. banc 1981).... [S]o far as the Collector of Revenue is concerned, the plaintiff is bound by the action of the mortgage company." *Buck*, 813 S.W.2d at 878.

In addition to finding subsection 5 of section 139.031 cannot be used to challenge a valuation in lieu of the exhaustion of administrative remedies, the Supreme Court has also found that subsection 5 is

not available to avoid the requirement of section 139.031 that taxes paid must be paid under protest. In *State ex. rel. Council Apartments, Inc. v. Leachman,* 603 S.W.2d 930 (Mo.1980), the Supreme Court addressed whether a taxpayer was entitled to a refund under a section 139.031.5 claim that the taxpayer mistakenly or erroneously paid taxes. In that case, Council Apartments paid the assessed ad valorem tax without protest. *Id.* at 930. Subsequently, Council Apartments' property was placed on the county tax-exempt roll. In holding that Council Apartments was not entitled to a refund of the ad valorem taxes paid prior to the determination that it was tax exempt, the Court stated:

> Until [Council Apartments] met its burden of establishing that its property was entitled to an exempt status, the assessment of ad valorem taxes against the property was proper and lawful, and payment of the tax was required. The payment without protest of a tax lawfully and properly assessed cannot be erroneous, or the result of a mistake within the meaning of § 139.031(4).[7]

*Id.* at 931.

The Supreme Court has held, however, that where the taxing authority makes it impossible for the taxpayer to take advantage of administrative remedies, the payment of taxes may be considered to be mistakenly or erroneously paid under section 139.031.5. In *Crest Communications v. Kuehle,* 754 S.W.2d 563, 567 (Mo. banc 1988), the Supreme Court ruled that a taxpayer who does not have notice of an increased assessment does not have to exhaust its administrative remedies or pay the taxes under protest to be entitled to a refund under section 139.031.5. *Id.* In that case, the taxes were based upon a property list on which the taxpayer valued its real and personal property. *Id.* at 563–

64. In 1985, Crest Communications was notified that the assessor increased the valuation of the property. *Id.* at 564. Crest Communications paid its 1985 taxes under protest and appealed to the board of equalization and then to the state tax commission. While its appeal was pending, Crest Communications filed its property list for 1986. The assessor increased the valuation in the same manner that it did for 1985. The assessor, however, did not notify Crest Communications of the 1986 increase. Crest Communications paid its taxes for 1986 based upon the increased assessment, without any indication that it was paying the taxes under protest. Subsequently, the state tax commission reduced the assessed value of Crest Communications' property in its review of the 1985 assessment. Crest Communications filed suit, claiming that it mistakenly or erroneously paid its taxes for 1986. *Id.*

The Court granted Crest Communications a refund, holding:

> [A]n increase without notice is invalid, and payment of such an increase by the taxpayer falls within the plain meaning and scope of taxes "mistakenly or erroneously paid" in the context of § 139.031, at least in a case in which the public authorities are well aware of the disagreement with the taxpayer over valuation, as indicated here by the 1985 valuation litigation. Like the taxpayer who makes a double payment of his tax bill, the plaintiff here has alleged payment of taxes not owed....

*Id.* at 567.

These cases establish that the nature of the challenge to the taxes paid determines whether an exhaustion of administrative remedies and payment under protest are required or whether the taxes fall within

---

**7.** Section 139.031(4), RSMo 1978, was the predecessor to section 139.031.5.

the definition of taxes that are "mistakenly or erroneously" paid. Not surprisingly, the parties do not agree on whether this case is a challenge to the property's valuation or a question of some other nature that fits within the exceptions to the statutory requirement that administrative remedies be exhausted and payment be made under protest. The Assessor and Collector assert that because the issue raised by Quaker Oats involves either a dispute concerning the amount of the assessment against Quaker Oats' tangible personal property or a dispute of the correct valuation to be placed on its property, it is a challenge to valuation and fits within the statutory provisions establishing a scheme for administrative review. Quaker Oats characterizes the issue differently. Quaker Oats claims that it was assessed and taxed on $10,000,000 of tangible personal property that it did not own and, therefore, the tax was "paid upon property not subject to taxation," so there was "an unlawful assessment of nontaxable property."

■ Here, the error that led to the excess tax that Quaker Oats challenges was its mistake in reporting the cost of property that it owned in 1999. It mistakenly reported the original cost of the portion of its property that was acquired in 1997. Quaker Oats listed the original cost of the property it acquired in 1997 at $18,452,482. This figure was $10,000,000 more than its actual cost of $8,452,482. Contrary to Quaker Oats' argument that it was assessed on property that it did not own, the gist of Quaker Oats' complaint is that it was assessed too much on property that it owned, due to the incorrect cost figure.

Section 138.430.1, authorizing appeals from the decision of the local boards of equalization to the state tax commission, encompasses "all questions and disputes involving the assessment against such property, the correct valuation to be placed on such property, the method or formula used in determining the valuation of such property, or the assignment of a discriminatory assessment to such property." Clearly, Quaker Oats' challenge to its tax concerns the correct valuation of its property. Its claim is the type of claim which the legislature intended to be addressed in the administrative process.

Further, Quaker Oats had notice of the assessed value before it paid the taxes. The Assessor followed the proper procedures in assessing and valuing the property. Therefore, the taxes were lawfully and properly assessed. Quaker Oats had an opportunity to correct its error when it learned of the assessed value of the property. At that time, Quaker Oats had notice that it made an error that more than doubled the cost of its personal property. Quaker Oats could have paid the taxes under protest, and the board of equalization could have corrected the assessment. Quaker Oats did not do so. This court finds persuasive the reasoning of the Colorado Supreme Court when it stated that it "perceive[s] no substantial injustice ... in requiring a taxpayer to check its records upon receiving a notice of valuation for errors in valuation based on information it supplied to the taxing authority." *Coquina Oil Corp. v. Larimer County Bd. of Equalization*, 770 P.2d 1196, 1201 (Colo. banc 1989). To recover the taxes that Quaker Oats paid, it was required to file a claim with the board of equalization and, if it wanted to pay the taxes to avoid penalties and interest, it was required to pay the taxes under protest.

■ Quaker Oats argues that "[i]t would ... be fundamentally unfair, a denial of due process and a violation of the constitutional mandate that taxes shall be assessed in a fair and equitable manner, to prohibit recovery of [Quaker Oats'] overpayment on nonexistent property that

was assessed as a result of a clerical error." To the contrary, a narrow construction of the relief available in subsection 5 of section 139.031 is necessary, considering that there needs to be certainty for taxpaying entities and the ability of the collector to disburse the taxes. The Supreme Court has recognized that "public policy discourag[es] suits for the refund of taxes erroneously paid or illegally collected and favor[s] certainty in the collection of revenue." *Crest Communications,* 754 S.W.2d at 567. Furthermore, "[t]hough it shocks the equitable conscience, the general rule is well-settled that the sovereign need not refund taxes voluntarily paid, but illegally collected." *Ring v. Metro. St. Louis Sewer Dist.,* 969 S.W.2d 716, 718 (Mo. banc 1998). In this case, the tax was legally and properly assessed and collected. There is no injustice in failing to refund a tax when Quaker Oats, after notice of the excessive valuation of its existing property when it received its tax statement, failed to pursue administrative remedies or pay the tax under protest as required by statute. Quaker Oats' claim is barred because of its failure to exhaust its administrative remedies and to pay the taxes under protest.

Accordingly, the Assessor and the Collector's other claims of error are rendered moot. The judgment of the circuit court is reversed and the cause is remanded to the circuit court with directions that a judgment be entered in favor of the Assessor and the Collector.

All concur.